Jeannittia B. NEWTON and Allie Haney Barrett, Plaintiffs,

v.

Lee BURGIN et al., Defendants.

No. C–C–72–17.

United States District Court, W. D. North Carolina, Charlotte Division.

Argued June 22, 1973.

Decided Aug. 22, 1973.

George S. Daly, Jr., of Casey & Daley, Charlotte, N. C. (Norman Monhait, second-year law student at Harvard), for plaintiffs.

R. S. Weathers, Asst. Atty. Gen., N. C. Dept. of Justice, Raleigh, N.C., for defendants.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and McMILLAN, District Judge.

## OPINION OF THE COURT

GORDON, Chief District Judge.

At 12:30 A.M. on January 18, 1972, the plaintiff, Jeannittia B. Newton, was arrested in Mecklenburg County, North Carolina, and placed in custody for the unlawful possession of "a hypodermic syringe, and needle for the purpose of administering controlled substance. The said syringe, and needle was (sic) subject to the control and dominion of the defendant in that the said needle and syring (sic) was in her hand, and she was sitting in the back seat, on the left side, of an automobile in which she was a passenger."

It is not clear to the Court who was driving the vehicle, but also in the car was Tallie Dewanna Newton, the two-year old daughter of the plaintiff Newton. A Charlotte, North Carolina, policeman took the child to an emergency receiving home regularly maintained by the Mecklenburg County Department of Social Services.

The defendant, Lee Burgin of the Mecklenburg County Department of Social Services, Child Welfare Division, was notified of the child's arrival at the receiving home. Burgin interviewed the plaintiff Newton the same day as the arrest and found that the plaintiff Newton was separated from the infant's father and the father's whereabouts was unknown. He also learned that the plaintiff Newton was living in a trailer with her mother, the plaintiff Allie Haney Barrett, in Gaston County. Following this interview the defendant Burgin executed a juvenile petition invoking the jurisdiction of the juvenile court as provided in North Carolina General Statute, section 281, chapter 7A, explaining that the mother was in jail and requesting the court to determine that the child was "in need of the care, protection or discipline of the State."

Acting on the defendant Burgin's petition, a Mecklenburg County District Court Judge entered an *ex parte* order commanding the Child Welfare Division of the Mecklenburg County Department of Social Services to assume custody of the child pending a hearing set for January 25, 1972. This order was made pursuant to North Carolina General Statute, section 284, chapter 7A, which is the statute that the plaintiffs have attacked as unconstitutional and which provides as follows:

"If it appears from a petition that a child is in danger, or subject to such serious neglect as may endanger his health or morals, or that the best interest of the child requires that the court assume immediate custody of

the child prior to a hearing on the merits of the case, the judge may enter an order directing an officer or other authorized person to assume immediate custody of the child. Such an order shall constitute authority to assume physical custody of the child and to take the child to such place or person as is designated in the order. The court shall conduct a hearing on the merits at the earliest practicable time within five days after assuming custody, and if such a hearing is not held within five days, the child shall be released."

Around 7:00 o'clock P.M. on January 18, 1972, the plaintiff Newton posted bond and was released from the Mecklenburg County Jail. On January 19, 1972, the plaintiffs Newton and Barrett sought custody of the child from the Child Welfare Division but their request was refused.

On the same day the defendant Burgin requested the Gaston County Department of Social Services to investigate the home where the plaintiffs lived with the child. A report dated January 20, 1972, was prepared by a Gaston County social worker which in general reported that the trailer was found in a state of disorder, that it was dirty, and that it had little or no food present. This report was sharply contradicted by the plaintiff Barrett in an affidavit dated January 22, 1972, which stated that the trailer was in a state of disorder because they had just recently moved in and were still unpacking; she also stated that there was plenty of food in the refrigerator.

On January 21, 1972, the plaintiff Barrett applied for a hearing before the district court judge who had issued the initial order to request an *ex parte*, temporary custody order. The defendant Burgin was called and he tendered the Gaston County social worker's report to the court. The court declined to consider the report and refused to hear the

plaintiff Barrett until the already scheduled hearing was held on January 25, 1972. However, the hearing was never held because the plaintiffs were able to temporarily restrain the defendants by order of the United States District Court. The federal court further ordered that the child be delivered to the custody of her mother and the proceedings of the Mecklenburg County District Court be stayed until a three-judge court could be empaneled to determine the constitutionality of section 284, chapter 7A of the North Carolina General Statutes.

## DISCUSSION

■ Before reaching the merits of the case, the plaintiffs must first overcome the question of this Court's equitable jurisdiction in this matter. The defendants, relying on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and Lynch v. Snepp, 472 F.2d 769 (4th Cir. 1973), strongly contend that this Court does not have equitable jurisdiction over this matter and the Court should abstain and give the state courts a chance to interpret the statute.

The *Snepp* decision sets out several reasons why the federal courts should be slow to interfere with state court proceedings. One such reason is the general rule of equity that equitable relief should be denied where there is an adequate remedy at law and the party will not suffer irreparable injury; this principal of law is combined with the concept of "federalism" or "sensitivity" to the legitimate activities of the States and forms the basis for the doctrine of abstention. The Court in *Snepp* applied the following test to the facts in that case: (1) Did the plaintiffs show an injury which could not be dissipated should these plaintiffs defend in the state civil proceeding, and (2) Is there an irreparable injury which is both great and immediate?[1]

---

1. The *Snepp* decision also has a third requirement that the case be reasonably free

from doubt, but since the *Snepp* case deals with the question of whether a dis-

Under N.C.G.S. 7A–§ 284 a parent will be deprived of the custody of its child or children for at least five days and in the instant case seven days [2] before the parent can defend his or her right to custody in a state civil proceeding. This five-day separation is clearly an injury to the parent which occurs before he or she has a chance to defend his or her right to custody in a civil proceeding, and it is an injury which occurs regardless of the outcome of the civil proceeding. The defendants argue that the plaintiffs could have initiated a state habeas corpus petition, but this is not required in the rules laid down in the *Snepp* case since the plaintiff need only show a great and immediate, irreparable injury and that the injury cannot be dissipated in the *defense* of the state civil proceeding.

It is equally clear that the deprivation of custody prior to the civil proceeding is an irreparable injury which is both great and immediate. The Court finds therefore, that the plaintiffs in this case have shown an irreparable injury which is both great and immediate and that the injury will not be dissipated in the state proceedings. It follows that it would not be proper for the Court to abstain from deciding the case on its merits, and the Court therefore turns to the merits of the plaintiffs' arguments.

The plaintiffs' basic contention is that N.C.G.S. 7A–§ 284 is unconstitutional because it deprives parents of the custody of their child for a five-day period without due process of law as guaranteed by the Fourteenth Amendment. The plaintiffs are asking this Court to grant a declaratory judgment that the child's seizure was unconstitutional, a declaratory judgment that the "five-day" period is unconstitutional in that it deprives the plaintiffs of custody without a hearing, and a permanent injunction against enforcement of the statute in the future.

The plaintiffs base their argument on the premise that control and custody of a child by its parent is a constitutionally protected right. With this premise the Court will not take issue; indeed, the United States Supreme Court has spoken on the subject on many occasions. In Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–1213, 31 L.Ed.2d 551 (1972), the Court stated:

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), 'basic civil rights of man,' Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1665 (1942), and '[r]ights far more precious . . . than property rights,' May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, *supra*, 262 U.S. at 399, 43 S.Ct. at 626, the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, *supra*, 316 U.S. at 541, 62 S.Ct. at 1113, and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)."

In Stanley v. Illinois, *supra,* the Court ruled that a parent could not be deprived of *permanent* custody of his child without following the proper due process

---

trict court should abstain before granting a preliminary injunction, this requirement is not applicable to the question of whether a three-judge court should abstain from deciding the merits of a case.

2. Rule 6(a) of the North Carolina Rules of Civil Procedure provides that in the computation of periods of time less than seven days, intermediate Saturdays, Sundays and holidays are not counted.

procedures. In that case Illinois statutes made unwed fathers presumptively unfit parents and denied them custody of their children. The Court made it clear that the interest of the State in protecting and caring for children were valid and legitimate ones, but denying a natural father of custody without a hearing to determine whether or not he would be a fit parent violated the Constitution in trying to achieve the state interest.

The Court is therefore faced with valid but conflicting interests: the interest of the parent in the custody of his or her child and the interest of the State in protecting and caring for children who are being neglected. To resolve this conflict, the Court must decide if the means that the State uses to protect its interest are "constitutionally defensible." Stanley v. Illinois, *supra*, 405 U.S. at 652, 92 S.Ct. 1208.

The plaintiffs attack the North Carolina statute by relying on recent decisions of the Supreme Court which require due process procedures to be met before any significant property right is affected. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the State was required to comply with due process before terminating welfare benefits; in Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), due process was extended to drivers who had their driving licenses taken without a hearing; and in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court struck down Florida and Pennsylvania statutes which permitted a private party to make an *ex parte* application for a writ of replevin and have the sheriff seize the property. The only protection provided to the person in possession of the property was a requirement that the person making the application had to post a bond for double the value of the property to be seized. The plaintiffs argue that the right to custody of one's child is certainly more important than the possession of chattels

and therefore, they claim that a parent has an immediate right to a hearing to "minimize substantively unfair or mistaken" seizures of children.

While these cases do stand for the proposition that the due process requirements of notice and a chance to be heard should be given prior to the particular deprivation, the Supreme Court has been careful not to confine the concept of due process to a particular slate of rules, leaving room for "extraordinary situations" which would justify postponing the hearing until after the event.

In Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 16 L.Ed.2d 1230 (1961), a civilian cook was denied access to a Naval installation without prior notice or opportunity of a hearing because she was unable to pass a security clearance even though she had worked on the base for six years prior to the security check. In upholding the action of the Naval authorities, the Court stated, "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." 367 U.S. at 895, 81 S.Ct. at 1748. And in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the Court stated:

> "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." 401 U.S. at 378–379, 91 S.Ct. at 786.

The case of Fuentes v. Shevin, *supra*, is also careful to point out that there are situations where the hearing can be held after the seizure, and the Court there examines cases where outright seizures have been permitted without an opportunity for a prior hearing. Certain circumstances were found to be

present in each case and the following guidelines were established:

"First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monoply of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 91, 92 S.Ct. at 2000.

The North Carolina statute clearly meets the first two guidelines; there is certainly an important governmental interest and public interest in guarding the welfare of neglected children. And surely the care and needs of children require "very prompt action."

The third guideline set out in the *Fuentes* case cannot be fully complied with since N.C.G.S. 7A–§ 284 allows persons other than government officials to initiate a juvenile petition to invoke the juvenile court's jurisdiction. However, an examination of the cases which led to the formation of these guidelines[3] reveals that all of the cases are concerned with the seizure of property or money to protect some public interest, but none of the cases deal with the much more important interest of immediate individual needs. It would therefore appear to the Court that the third guideline should not always be required in factual situations dealing with immediate human needs which require a more flexible hand in dealing with problems such as the care of children. Applying the idea that due process requires flexibility in order to

meet varied factual situations, the Court does not feel that the single fact that any citizen, as opposed to a government official, can initiate a juvenile petition should outweigh the strong State and public interest in prompt attention to the welfare of its children. Child neglect, according to authorities, is widespread and annually in the United States results in permanent injury, physically and emotionally, to thousands of children.

This single failure is not to say that the North Carolina statute has completely done away with procedural safeguards in order to protect neglected children; on the contrary, it is not as broad as the statutes in the *Fuentes* case and unlike those statutes, N.C.G.S. 7A–§ 284 requires that the petition be approved by a state district court judge and provides for a hearing within five days from the time the State takes custody of the child. There is no doubt that most parents do not want to be without the custody and companionship of their child for five days, but this is a relatively small price to pay compared to the possible neglect or mistreatment that a helpless child might have to endure were it not for the immediate action that can be taken under N.C.G.S. 7A–§ 284.

From the facts before this Court, the plaintiffs do not argue the child's welfare would have been best served by leaving the child in the automobile following the mother's arrest or that the child should have stayed with her mother and been exposed to the surroundings of a county jail. The plaintiffs do argue, however, that the child should have been returned or a hearing held upon her release from jail some eighteen hours after she was first taken into custody or upon the request of another relative, such as the grandmother.

---

3. Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), to protect the public from misbranded drugs; Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), to protect against bank failure; Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), to collect revenue of the United States; Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403 (1921), to meet the needs of a national war effort; and North American Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908), to protect public from contaminated food.

The plaintiff was released only after she was able to post bond, but her confinement could have been longer had she been unable to make bond. The point in time that a parent might be in a position to resume custody of the child will vary with the facts of the particular case. The State has attempted to deal with the time problem by requiring a hearing at the earliest practical time within five days.

This is not an unreasonable or arbitrary length of time when the interests of both parties are considered. Five days would appear to be the minimum time that either party could prepare for a hearing to determine the fitness of a parent. Certainly the interests of the child will be better represented if there is time to investigate the living conditions of the child before the hearing, and in most cases the parent needs time to prepare his or her case to rebut the State's allegations and to obtain character witnesses. In many instances the time to prepare his or her case will benefit the parent because the hearing court, rather than having to rely on the facts surrounding a single incident alleged in the petition, will have more information about the parent.

Therefore, considering the interest and loss experienced by the parent under N.C.G.S. 7A–§ 284 when compared to the possible consequences and interests of the child, and considering the Supreme Court's statements on the need for flexibility in establishing due process procedures and the cases where exceptions to the usual due process procedures have been approved, the Court finds that N.C.G.S. 7A–§ 284 is "constitutionally defensible" and not in violation of the Due Process Clause of the Fourteenth Amendment.

Accordingly, an order granting the defendant's motion for summary judgment will be entered.

McMILLAN, District Judge.

Reserving only my continuing view that Lynch v. Snepp was correctly analyzed and decided at the district court level, 350 F.Supp. 1134 (W.D.N.C. 1972), rather than at the Circuit Court level, 472 F.2d 769 (4th Cir. 1973), cert. pending, United States Supreme Court, I concur in the well-reasoned opinion of Judge Gordon.