**Allen BROWN and Gennie Brown, Plaintiffs,**

v.

**Jim JONES, Supervisor, Child Welfare Unit, Wichita County Family Court Services, Helen Hicks, Child Welfare Counselor, Texas Department of Human Resources, and the State of Texas, Defendants.**

Civ. A. No. CA–7–78–82.

United States District Court,
N. D. Texas,
Wichita Falls Division.

March 19, 1979.

440

Gene Douglass, Wichita Falls, Tex., for plaintiffs.

Tom Schrandt, William H. Harris, Wichita Falls, Tex., Ann Clarke Snell, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Came on for consideration defendants' motion to dismiss the above-styled cause of action. Having reviewed the motion and the briefs of the parties, the court is of the opinion that, except for the plaintiffs' action based on defendants' threatened use of the Child Abuse and Neglect Report and Inquiry System ("CANRIS"), the motion should be granted. With respect to the plaintiffs' request for equitable relief based

on defendants' use of CANRIS, the court is of the opinion that such relief should be granted.

## I. *The Facts*

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and seek injunctive relief with respect to a pending state proceeding which was instituted by defendant Helen Hicks ("Hicks") in order to terminate the parent-child relationship existing between plaintiffs and their child, Bryan J. Brown ("child"). Plaintiff Allen Brown ("Mr. Brown") is the natural father of the child and is married to plaintiff Gennie Brown ("Mrs. Brown"), who is not the natural mother of the child. The plaintiffs also have three other children, who are Shelly Denay Brown, a child of Mr. Brown's prior marriage, and Monica Sue Willey and Dewayne Eugene Castleberry, children of the prior marriages of Mrs. Brown. Defendant Hicks is a child welfare counselor of the Wichita County Family Court Services, and defendant Jim Jones ("Jones") is the supervisor of the child welfare unit. Also named as defendants are the Texas Department of Human Resources and the State of Texas. The guardian ad litem of the child has intervened in this action without objection by the parties. The facts which give rise to this lawsuit are summarized in the following manner and are drawn from the pleadings, the stipulations of fact, and the evidence presented at the preliminary injunction hearing.

On November 16, 1978, the child sustained an injury to his head, a subdural hematoma, and was taken to the Sheppard Air Force Base Hospital Emergency Room. He remained confined in various hospitals until approximately a week before Christmas. On November 16 Hicks filed an original petition for the emergency protection of the child in the juvenile court of Wichita County. This petition requested the court to issue an order appointing the child welfare unit as the temporary managing conservator of the child, and the administrator of the hospital as temporary possessory conservator of the child. The order was granted by the court, but no date was set for a hearing on the matter in such order. At the time Hicks filed the petition, she did not have possession of the child, who was confined in the hospital in critical condition, and she did not deliver the child to the court. The plaintiffs were not formally notified about the petition or order, although there is evidence that Mr. Brown had some knowledge of the proceedings.

On the next day, November 17, Hicks appeared before Judge Temple Driver, a state district court judge, and made an oral, unsworn request for an emergency protection order for the other three children. This request was made without notice to the plaintiffs. Judge Driver orally granted the request. At this time, Hicks did not have possession of the children nor did they appear before the court. A written petition requesting an emergency protection order was later filed by Hicks on the same day, and a written order was also entered by Judge Driver. At approximately 3:00 p. m., a hearing was held in Judge Driver's court regarding the emergency protection orders issued for the four children. William Harris was appointed guardian ad litem for the children by the court. Mr. Brown was present at this hearing, but was not allowed to respond to any of Hicks' representations to the court. Mrs. Brown was not present at the hearing since she was confined in a psychiatric ward at that time.

Thereafter, at Hicks' request, Judge Driver on November 21 entered an order allowing release of the medical records of the child to the appropriate representative of the welfare unit. This order was issued without notice to the plaintiffs and without their consent. On November 22 Hicks filed an original petition affecting the parent-child relationship, wherein she sought to terminate the parent-child relationship existing between plaintiffs and their four children. Plaintiffs were served with this petition, and a hearing was set for November 27. By the date of the hearing, plaintiffs answered and raised their objections to the proceedings. At the hearing plaintiffs were also represented by counsel. At the conclusion of Hicks' presentation of evidence,

Judge Driver granted plaintiffs' motion to dismiss with respect to the three children other than the child. Judge Driver also acknowledged that the burden of proof would be upon the state. Hicks testified at the hearing that with respect to this case she would make a report of suspected child abuse into the Texas Department of Public Welfare's computerized child abuse and neglect reporting system, CANRIS. On November 29 Judge Driver entered a temporary order appointing the supervisor of the Wichita County Child Welfare Unit, Jones, as temporary managing conservator of the child, and Juanita and Marvin Brown, the grandparents of the child, as his temporary possessory conservators. On December 19 plaintiffs filed a motion to appoint themselves as co-possessory conservators and to specify visitation privileges. On January 2, 1979, Judge Driver entered an order setting a date for a final hearing on the matter, February 8. On January 3 Judge Driver entered his findings of fact and conclusions of law regarding the November 27th hearing. He found by clear and convincing evidence and by a preponderance of the evidence that for the protection of the child the orders concerning the possessory and managing conservatorships should be continued during the pendency of the cause.

Plaintiffs filed their federal suit on December 20, 1978, and raised numerous objections to the state proceedings involving the child. More specifically, they contend that their constitutional rights of substantive and procedural due process as well as their right of privacy have been violated by defendants' actions: (a) in failing to take the child before the court at the time the emergency protection order was issued; (b) in issuing and obtaining emergency protection orders for the child without notice to plaintiffs; (c) in failing to set out the factual basis in writing by way of application for the emergency protection orders and petitions affecting the parent-child relationship; (d) in failing to grant plaintiffs an adversarial hearing on due notice prior to the filing of the two petitions affecting the parent-child relationships; (e) in filing the two petitions affecting the parent-child re-

lationship without a judicial order to do so; (f) in placing upon plaintiffs the burden of showing cause why the relief requested by Hicks should not be granted; (g) in applying the burden of preponderance of the evidence rather than clear and convincing evidence at the November 27 hearing; (h) in holding the November 27 hearing more than ten days after the initial seizure of the child; (i) in issuing the order allowing the representative of the welfare unit to have access to the child's records; and (j) by Hicks' threatened input of the alleged child abuse information into CANRIS absent or contrary to a judicial determination concerning such information. With respect to the other three children, plaintiffs' contentions for the most part are moot since the state proceedings concerning them have been dismissed and custody returned to the plaintiffs. Plaintiffs seek no damages concerning the actions taken with respect to the three children. The defendants have moved to dismiss on the grounds that under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), this court should exercise equitable restraint and refrain from interfering with the pending state proceeding regarding plaintiffs and the child.

## II. The *Sims* Case

In *Sims v. State Department of Public Welfare*, 438 F.Supp. 1179 (S.D.Tex.1977), *prob. juris. noted sub. nom., Moore v. Sims*, 439 U.S. 925, 99 S.Ct. 306, 58 L.Ed.2d 317 (1978), a three-judge court considered the constitutionality of the Texas statutes dealing with summary seizure of children who are subjected to suspected child abuse. Similar to the facts in this case, the plaintiffs' children in *Sims* had been seized summarily by a case worker for the county child welfare unit. A day after the seizure, the welfare unit instituted a suit for the protection of children in an emergency. The state court issued an ex parte order removing the children from the custody of their parents. Five days later, the parents presented a motion for modification of the ex parte order. They also filed a writ of habeas corpus with the state court. Five days af-

ter these events, a hearing was held on the habeas petition. The merits of the parents' objections were not reached, however, since the state court concluded that proper venue lay in another county. At the same time, the state court also directed the county child welfare unit to file a suit affecting the parent-child relationship, and another ex parte temporary order was issued by the state court. Approximately two weeks after the transfer, the parents filed a suit in federal court challenging the constitutionality of the Texas child abuse statutes and sought declaratory, injunctive and monetary relief. Forty-five days after the initial seizure of the children, a hearing was held in federal court, and custody of the children was returned to the parents. A state court hearing on the matter, scheduled for a later date, was enjoined pending resolution of the federal action.

In addressing the problem of equitable restraint in enjoining a pending state proceeding, the Sims court held that the principles of Younger were not applicable. This conclusion was based on two alternative grounds: (a) the state proceedings were multifaceted, and, therefore, the plaintiffs could not raise their constitutional defenses in a single state proceeding; and (b) plaintiffs' primary challenge to the state procedures, denial of custody of the children without a hearing, could not be asserted in the normal course of the pending state proceedings. Even assuming that the nature of the state action and the constitutional challenge were such as to require the application of Younger principles, the Sims court found that the circumstances of that case did not warrant abstention. First, the court noted that the threatened injury to the plaintiffs was both great and immediate. Further, the injury could not be prevented without federal intervention prior to any scheduled state hearing on the matter. The court also decided that several sections of the Texas Family Code were flagrantly and patently violative of federal constitutional requirements. Finally, extraordinary and compelling circumstances were present in Sims since the plaintiffs had attempted without success to obtain a hearing on their claims in state court and the challenges they raised concerned the very procedures to which they had been subjected.

Having concluded that Younger abstention was not warranted in the light of the facts of that case, the Sims court held that several sections of the Texas Family Code were facially invalid,[1] and that other sec-

---

1. The following provisions of Title 2, Texas Family Code were found to be facially invalid:

§ 11.10. Guardian Ad Litem

(a) In any suit in which termination of the parent-child relationship is sought, the court shall appoint a guardian ad litem to represent the interest of the child, unless the child is a petitioner or unless an attorney ad litem has been appointed for the child or unless the court finds that the interests of the child will be represented adequately by a party to the suit and are not adverse to that party. In any other suit under this subtitle, the court may appoint a guardian ad litem. The managing conservator may be appointed guardian ad litem if he is not a parent of the child or a person petitioning for adoption of the child and if he has no personal interest in the suit.

(b) A guardian ad litem shall be appointed to represent any other person entitled to service of citation under the provisions of Section 11.09 of this code if the person is incompetent or a child, unless the person has executed an affidavit of relinquishment of parental rights or an affidavit of waiver of interest in child containing a waiver of service of citation.

(c) The court may appoint an attorney for any party in a case in which it deems representation necessary to protect the interests of the child who is the subject matter of the suit.

§ 11.15. Findings

The court's findings shall be based on a preponderance of the evidence under rules generally applicable to civil cases.

§ 17.02. Hearing

Unless the child is taken into possession pursuant to a temporary order entered by a court under Section 11.11 of this code, the officer or representative shall file a petition in the court immediately on delivery of the child to the court, and a hearing shall be held to provide for the temporary care or protection of the child.

§ 17.03. Notice

The proceeding under Section 17.02 of this code may be held without notice.

§ 17.05. Duration of Order

(a) An order issued under Section 17.04 of this code expires at the end of the 10-day period following the date of the order, on the

tions were unconstitutional as applied.[2] The court here does not wish to restate the entire *Sims* opinion but does offer the following summary of the holdings made in

restoration of the child to the possession of its parent, guardian, or conservator, or on the issuance of ex parte temporary orders in a suit affecting the parent-child relationship under this subtitle, whichever occurs first.

(b) If the child is not restored to the possession of its parent, guardian, or conservator, the court shall:

(1) order such restoration of possession; or

(2) direct the filing of a suit affecting the parent-child relationship in the appropriate court with regard to continuing jurisdiction.

§ 17.06. Modification

On the motion of a parent, managing conservator, or guardian of the person of the child, and notice to those persons involved in the original emergency hearing, the court shall conduct a hearing and may modify any emergency order made under this chapter if found to be in the best interest of the child.

§ 34.05(c). Investigation and Report of Receiving Agency

The investigation shall include a visit to the child's home, a physical and psychological or psychiatric examination of all the children in that home, and an interview with the subject child. If admission to the home, school, or any place where the child may be, or permission of the parents or persons responsible for the child's care for the physical and psychological or psychiatric examinations cannot be obtained, then the juvenile court, or the district court, upon cause shown, shall order the parents or the persons responsible for the care of the children, or the person in charge of any place where the child may be, to allow entrance for the interview, above examinations, and investigation.

§ 34.08. Confidentiality

The reports, records, and working papers used or developed in an investigation made under this chapter are confidential and may be disclosed only for purposes consistent with the purposes of this code under regulations adopted by the investigating agency. The court permanently enjoined the State Department of Public Welfare from enforcing and applying these provisions.

2. The court found that the use of CANRIS as provided for in Section 34.06 of the Family Code for information gathering and dissemination of the child abuse reports absent a judicial determination of abuse or neglect and the use of Section 11.11(a)(4) in conjunction with Chapter 17 to deprive parents of custody of their children for longer than ten days without an adversary hearing were unconstitutional applications of those provisions. The State Department of Public Welfare was permanently enjoined from so applying or enforcing them.

Section 11.11 provides:

§ 11.11. Temporary Orders

(a) In a suit affecting the parent-child relationship, the court may make any temporary order for the safety and welfare of the child, including but not limited to an order:

(1) for the temporary conservatorship of the child;

(2) for the temporary support of the child;

(3) restraining any party from molesting or disturbing the peace of the child or another party;

(4) taking the child into the possession of the court or of a person designated by the court; or

(5) attaching the body of the child or prohibiting a person from removing the child beyond the jurisdiction of the court as under a writ of ne exeat.

(b) Temporary orders under this section are governed by the rules governing temporary restraining orders and temporary injunctions in civil cases generally.

Section 34.06 provides:

§ 34.06. Central Registry

The State Department of Public Welfare shall establish and maintain in Austin, Texas, a central registry of reported cases of child abuse or neglect. The department may adopt rules and regulations as are necessary in carrying out the provisions of this section. The rules shall provide for cooperation with local child service agencies, including hospitals, clinics, and schools, and cooperation with other states in exchanging reports to effect a national registration system.

Other provisions of Chapter 17, which the *Sims* court either found to be valid or did not pass on, and which are relevant to this case, are:

§ 17.01. Taking Possession in Emergency

An authorized representative of the State Department of Public Welfare, a law-enforcement officer, or a juvenile probation officer may take possession of a child to protect him from an immediate danger to his health or physical safety and deliver him to any court having jurisdiction of suits under this subtitle, whether or not the court has continuing jurisdiction under Section 11.05 of this code. The child shall be delivered immediately to the court.

§ 17.04. Grounds and Disposition

On a showing that the child is apparently without support and is dependent on society for protection, or that the child is in immediate danger of physical or emotional injury, the court may make any appropriate order for the care and protection of the child and may appoint a temporary managing conservator for the child.

§ 17.07. Effect of Appeal

An appeal from an emergency order made under this chapter does not stay the order.

§ 17.08. Continuing Jurisdiction not Retained

*Sims* with respect to the statutory provisions involved in this case.

Under § 17.01, the State Department of Public Welfare is entitled to take custody of a child in order "to protect him from an immediate danger to his health or physical safety." Such language was found in *Sims* to represent a constitutionally adequate standard. Sections 17.02 and 17.03 together provide that a hearing shall be held to provide for the temporary care or protection of a child seized under § 17.01, and such hearing may proceed without notice. The *Sims* court ruled that, although an ex parte order issued under these sections was not constitutionally infirm, due process required that the state make all reasonable efforts to notify the parents. Other defects, which *Sims* discovered in § 17.02, were the lack of any requirement that the hearing be held immediately and the language of the section which assumes that care or protection is needed. With respect to §§ 17.05 and 17.06, *Sims* found that they also violated constitutional guarantees because the provisions do not require a full adversarial hearing with notice at the expiration of the initial temporary order. Instead, §§ 17.05 and 17.06 place an unconstitutional burden on the parents to seek modification of the temporary order. The 10-day period provided for in § 17.05 was held to be constitutionally acceptable, but the *Sims* court stated that the state could not apply this section along with § 11.11 in order to "stack" ex parte orders of custody without an adversarial hearing. Nor may the state trial court, under § 17.05(b)(2), direct the filing of a suit affecting the parent-child relationship without having first determined the need therefor in a full adversary hearing. The standard of proof, which the *Sims* court decided was constitutionally required, is clear and convincing rather than by a preponderance of the evidence as stated in § 11.15, and the burden of proof is on the state.

With respect to other aspects of the statutory scheme, the *Sims* court held that § 11.10 is unconstitutional for failing to require the appointment of a guardian ad litem to represent the interests of the child. Finally, the court in *Sims* also ruled that the use of the computer reporting service, CANRIS, under § 34.08, absent a judicial determination of abuse or neglect, was an unconstitutional application of that provision.

### III. The *Younger* Doctrine

■ The initial point of inquiry is determining whether the *Sims* decision prevents this court from making its own independent decision concerning abstention. While the court does believe that due deference should be given to *Sims,* the stare decisis effect of that case is certainly less binding than a decision by the Fifth Circuit or the Supreme Court, *see generally* 1B Moore's Federal Practice ¶ .402 (rev. ed. 1974). Further, the following statement made in *Sims* is instructive:

> From this we conclude that because of the wide range of interests and circumstances that could conceivably be present in a civil dispute, the proper role of a federal court is to carefully analyze each dispute individually with an equitable view toward the principles of comity and federalism and a careful study of the state action involved.

438 F.Supp. at 1187. Abstention under the *Younger* doctrine depends on the application of certain principles of law to the facts of each individual case. Accordingly, the court concludes that the question of equitable restraint may be examined anew in light of the particular circumstances of the present action.

The court having jurisdiction of a child under this chapter does not retain continuing jurisdiction within the meaning of Section 11.05 of this code.

§ 17.09. Civil Liability

A person who takes possession of a child under Section 17.01 of this code is immune from civil liability if, at the time possession is taken, he had reasonable cause to believe there was an immediate danger to the physical safety or emotional well-being of the child.

The principles of *Younger* have been expounded on in a number of Supreme Court decisions, *see e. g., Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). It is, of course, no secret that the Supreme Court has in recent terms enlarged the boundaries of the doctrine stated in the original case of *Younger v. Harris,* see *A. Soifer & H. MacGill, The Younger Doctrine: Reconstructing Reconstruction,* 55 Texas L.Rev. 1141 (1977); *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133 (1977). The theory of *Younger* is no longer limited to pending state criminal actions, but instead reaches to those enforcement actions which vindicate important state interests, *Trainor v. Hernandez, supra; Juidice v. Vail, supra; Huffman v. Pursue, supra.* Thus, the labels of "civil" or "criminal" are no longer determinative, but, instead, an analysis must be made of both the state interests involved in the pending proceedings, and the extent to which federal intervention will affect those interests, *Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646 (5th Cir. 1978).

Assuming the state interests are sufficient to warrant the protection of *Younger,* the next problem to be faced by a federal court is twofold: first, will the pending state proceeding provide the plaintiff with a fair and sufficient opportunity for vindication of his federal constitutional rights, *i. e.,* will the plaintiff have an adequate remedy in state court; and, second, is the irreparable injury asserted both great and immediate, *Trainor v. Hernandez,* 431 U.S. at 441–42, 97 S.Ct. 1911. In general, if the plaintiff can raise his federal constitutional rights in the normal course of the pending state proceeding, or if his injury is not both great and immediate, then a federal court should refrain from enjoining the state proceeding. There are, however, exceptional situations where the federal court may enjoin notwithstanding the applicability of *Younger.* The two examples, which have been given by the Supreme Court, are (a) where the pending state action was brought in bad faith or for purposes of harassment; and (b) where the state enforcement action is pursuant to a statute which is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it. In addition, the Supreme Court has stated that "other" extraordinary circumstances may arise in which the necessary irreparable injury can be shown even in absence of bad faith and harassment. Finally, a federal court should also consider the purpose of the *Younger* doctrine which involves weighing the role of a federal court as the protector of federal constitutional rights against concerns of comity and federalism. *Younger* serves as a guard against needless friction between federal and state courts, duplicitous proceedings, improper reflections on a state court's ability to protect constitutional rights, and unnecessary disruption of state enforcement actions.

### A. The State's Interest

The state's interest in protecting children from potential abuse by others and in attempting to ensure their safety and well-being can hardly be doubted. The state has an important interest in the field of domestic relations and child custody disputes, *see Merrick v. Merrick,* 441 F.Supp. 143, 147 (S.D.N.Y.1977).[3] To a certain ex-

---

**3.** The intervenor has suggested that federal courts have traditionally avoided any inquiry into state domestic relation and child custody proceedings, citing *Tree Top v. Smith,* 577 F.2d 519 (9th Cir. 1978); *see also Huynh Thi Anh v.*

*Levi,* 586 F.2d 625 (6th Cir. 1978). These cases merely hold that federal courts will normally not address the merits of state domestic relations matters. The court here is not asked to address the merits involved, but only the con-

tent, the state's purpose in bringing such an action as the present one is similar to the enforcement of state criminal laws, that is, to protect a certain segment of its society from unlawful action by others. Certainly, the interest of the state in preventing child abuse is equal to or greater than their interests in enforcing a public nuisance statute, *Huffman v. Pursue,* or holding a person in contempt, *Juidice v. Vail,* or attaching property for fraudulently obtained state welfare benefits, *Trainor v. Hernandez.* Of course, the parents' fundamental rights to protection of the integrity of the family unit and of privacy are worthy of the most strict constitutional safeguards, *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); see *Sims v. State Department of Public Welfare,* 438 F.Supp. at 1190 and cases cited therein. Although these constitutional rights of the parents are fundamental ones, the state's interest in preventing child abuse is of a high enough importance to warrant the potential application of *Younger.*

### B. Pendency of State Proceedings

■ Having analyzed the nature of the state's interest, the next determination to be made is deciding whether the state proceeding is still pending. Obviously, the final hearing on the proposed termination of the parent-child relationship has not been held. Many of the plaintiffs' constitutional objections are addressed only to the procedures involved in the summary seizure of the child and the preliminary hearings. Stated in a slightly different manner, to what extent would the granting of federal equitable relief interfere with the final proceeding on the merits? In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), for example, the problems of

*Younger* were avoided, as the Court reasoned:

> Neither Mrs. Fuentes nor the appellants in No. 5138 sought an injunction against any pending or future court proceedings as such. . . . Rather, they challenged only the summary extra-judicial process of prejudgment seizure of property to which they had already been subjected.

*Id.* at 71, n. 3, 92 S.Ct. at 1989; *see also, Developments in the Law, supra,* at 1318–19.

In this case, however, it is clear that the plaintiffs are seeking injunctive relief against the future or pending trial on the merits. Further, they have raised objections to the sufficiency of the notice for the final state proceeding to terminate the parent-child relationship, and they have contended that the original petition is invalid since it was filed without a judicial determination as to the need for such action. If sustained, these challenges would result in federal injunctive relief against pending state proceeding.[4]

### C. Injury

■ In this case, plaintiffs seek three types of relief: (a) return of the custody of their child; (b) injunctive relief against the pending state proceedings; and (c) injunctive relief against the threatened input of information concerning plaintiffs into CANRIS. Putting aside the problem of plaintiffs' challenge to the use of CANRIS for the moment, the court now discusses the constitutional objections of the plaintiffs which could result in an injunction against the suit to terminate the parent-child relationship or return of the custody of the child to the plaintiffs. Plaintiffs have contended that the loss of custody of their

stitutional issues, *see Alsager v. District Court of Polk County,* 518 F.2d 1160, 1166 (8th Cir. 1975).

4. One possible alternative would be to decide the issues presented at the preliminary proceedings and abstain from deciding the other issues which could be presented at the final hearing on the merits, and later appealed. The main problem with this approach is that the

preliminary proceedings may not be complete since the plaintiffs have failed to pursue a possible appeal from the temporary orders issued by the state trial court, see *Huffman v. Pursue,* 420 U.S. at 609–11, 95 S.Ct. 1200. The preliminary proceedings may also be viewed as "very much a part of the underlying action." *See Trainor v. Hernandez,* 431 U.S. at 446 n. 9, 97 S.Ct. at 1919 n. 9.

child, either temporarily or permanently, is an irreparable injury which is both great and immediate. The court notes that at the hearing held in this cause plaintiffs' counsel stated that the other three children remained at the homes of plaintiff's relatives and would so remain during the pendency of a criminal action against the mother for child abuse. Apparently, if this court ordered the return of custody of the child to plaintiffs, he would continue to stay at the home of the grandparents until the criminal case is finally concluded.[5] Despite these facts, the court finds that the threatened injury to the plaintiffs is both great and immediate. If the plaintiffs had simply alleged an injury based on the temporary deprivation of their child, there might be some question concerning the nature of plaintiffs' injury. Plaintiffs, however, stand to lose custody of the child permanently, and the court, therefore, believes that their alleged injury would be both great and immediate.

### D. Adequacy of State Remedies

The more troublesome question is whether plaintiffs had an adequate state forum in which to raise their federal constitutional rights. In *Sims,* the parents had attempted to obtain a hearing on their constitutional objections, most of which were addressed to Chapter 17 of the Texas Family Code. Their efforts proved unavailing. At the time the federal court passed on the case, the plaintiffs' opportunity to present their challenges was limited to the final state proceeding to terminate the parent-child relationship. At that point, their contentions *regarding* the preliminary seizure of their children could probably not be raised as defenses to the hearing on the merits. Therefore, the *Sims* analogy to *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), was appropriate. In *Gerstein,* the Court found *Younger* principles to be inap-

plicable to a cause of action based on challenges to the pretrial detention of prisoners without a hearing notwithstanding pending criminal prosecutions. The attack on pretrial detention procedures could not be raised as a defense at the trial on the criminal charges. In other words, in both *Sims* and *Gerstein* the federal plaintiffs had no opportunity to raise their contentions concerning pretrial procedures at the pending state court proceedings. *See also Fernandez v. Trias Monge,* 586 F.2d 848 (1st Cir. 1978).

In this case, however, plaintiffs had the opportunity to raise their objections at the preliminary hearing held in the state court on November 27, *see Juidice v. Vail,* 430 U.S. at 336–37, 97 S.Ct. 1211. The plaintiffs presented their constitutional arguments to the state court and the state judge accepted their contentions regarding both the standard and the burden of proof. The state court also dismissed the action which involved the three children other than the child. Plaintiffs in this case have never contended that the state trial judge refused to even hear their constitutional arguments at the November hearing. This court cannot presume that Texas courts are less competent in handling federal constitutional claims than are federal courts, *Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646 (5th Cir. 1978). Further, the plaintiffs also have the opportunity to present their constitutional objections to the proceeding to terminate the parent-child relationship at that final trial.

The court does not wish to imply, however, that once the state trial court has ruled on the federal constitutional grounds a federal court is precluded from reconsidering those issues. State action under § 1983 encompasses state judicial action, *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Many of the plaintiffs' contentions regarding pretrial

---

5. Since the filing of this suit Ms. Brown has been adjudged guilty after a jury trial before this court, of recklessly or with criminal negligence engaging in conduct that caused serious bodily injury to a child who was 14 years of age or younger, see 18 U.S.C. § 13, Tex. Penal Code

§ 22.04 (Vernon 1974). Ms. Brown is awaiting sentence and one of the conditions of her bail is that she refrain from any contact with the child. Mr. Brown is in no way affected by this condition.

procedures would be moot on an appeal from a final trial on the merits. Therefore, in determining the adequacy of plaintiffs' state court remedies, it is necessary to consider any possible right of appeal in the state court system from the trial court's order of November 29, 1978, *see Developments in the Law, supra,* at 1325.

The November 29th order was issued pursuant to § 11.11 of the Texas Family Code.[6] Section 11.11(b) provides that "[t]emporary orders under this section are governed by the rules governing temporary restraining orders and temporary injunctions in civil cases generally." Under Texas law, temporary injunctions are appealable while temporary restraining orders, as a general rule, are non appealable. *See* Tex.R.Civ.P. 385. Note should also be taken of § 11.19 [7] of the Family Code which is the provision dealing with appeals. Section 11.19 makes no express reference to temporary orders issued under Chapter 11. At present, the decisions of the Texas Courts of Civil Appeals are in conflict over the appealability of temporary custody orders issued pursuant to various

provisions of the Texas Family Code, *Compare Craft v. Craft,* 579 S.W.2d 506 (Tex. Civ.App.-Dallas 1979, no writ); *Knipe v. Colpitts,* 551 S.W.2d 150, 151 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ); *Johnson v. Parish,* 547 S.W.2d 311, 312 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ); *Carpenter v. Ross,* 534 S.W.2d 447, 448 (Tex. Civ.App.-Beaumont 1976, no writ) (Authority that such orders are nonappealable) *with In Re R___ E___ W___,* 545 S.W.2d 573, 575 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ ref'd n. r. e.); *In Re Stuart,* 544 S.W.2d 821, 822 (Tex.Civ.App.-Tyler 1976, writ ref'd n. r. e.); *Martin v. Martin,* 519 S.W.2d 900 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) (Authority that such orders are appealable). Some of these decisions can perhaps be reconciled; others are in direct conflict. No authoritative Texas Supreme Court ruling on the issue has been given. The point to be made is that an appeal from a temporary custody order is not conclusively foreclosed under Texas law.[8] The Fifth Circuit in *Duke v.*

---

**6.** In the stipulation of facts, it is stated that "under Texas law and procedure the order of November 29, 1978 . . . is non-appealable." The defendants state of Texas and Texas Department of Human Resources did not join in the stipulation of "facts." Further, both sides have subsequently briefed this issue and no prejudice has been suffered by plaintiffs with respect to this issue.

**7.** Section 11.19 provides:

(a) Appeals from orders, decrees, or judgments entered in suits affecting the parent-child relationship, when allowed under this section or under other provisions of law, shall be as in civil cases generally.

(b) An appeal may be taken by any party to a suit affecting the parent-child relationship from an order, decree, or judgment:

(1) entered under Chapter 13 of this code;

(2) entered under Chapter 14 of this code appointing or refusing to appoint a managing conservator; appointing or refusing to appoint a possessory conservator; ordering or refusing to order payments for support of a child; or modifying any such order previously entered;

(3) entered under Chapter 15 of this code terminating or refusing to terminate the parent-child relationship; or appointing a managing conservator;

(4) entered under Chapter 16 of this code granting or refusing an adoption.

(c) An appeal from an order, judgment, or decree, with or without a supersedeas bond, does not suspend the order, decree, or judgment unless suspension is ordered by the court entering the order, decree, or judgment. The appellate court, on a proper showing, may permit the order, decree or judgment to be suspended.

(d) On the motion of the parties or on its own motion the appellate court in its opinion may identify the parties by fictitious names or by their initials only.

**8.** The intervenor has suggested that a direct appeal to the Supreme Court of Texas may have been available to the plaintiffs under Tex. Rev.Civ.Stat.Ann. art. 1738a (Vernon 1962), which allows such an appeal from any order of a trial court granting or denying an interlocutory or permanent injunction on the ground of the constitutionality or unconstitutionality of any statute of the State of Texas. *See also* Tex.R.Civ.P. 499a. In this case, the state trial court has not entered an order denying plaintiffs' requested injunctive relief. Further, an appeal under this section cannot involve any contested issues of fact, and if fact issues are present, the appeal will be dismissed under rule 499a. Finally, the right of appeal under the statute is a narrow one, *Mitchell v. Purolator Security, Inc.,* 515 S.W.2d 101 (Tex.1974). The court does note that the Texas Supreme Court

*State of Texas*, 477 F.2d 244 (5th Cir. 1973), after discussing the possibility of an appeal from a state trial court's decision under the facts of that case, made the following statement:

> The plaintiffs below made no effort to utilize orderly state court procedures before resort to the federal system. The refusal by the state trial court to consider Duke and Haylon's federal constitutional claims, see note 4, supra, did not alter the duty to pursue state remedies. Mere errors or mistakes by the state trial court are not special circumstances which justify federal intervention, cf. *Lynch v. Snepp*, supra, 472 F.2d 769 at 775–76 (4 Cir.). Other courts have indicated that failure to pursue state appellate remedies is a factor to be considered in refusing federal intervention in an ongoing state civil proceeding, *Lynch v. Snepp*, supra, 472 F.2d at 775–76; cf. *Cousins v. Wigoda*, supra, 463 F.2d 603 at 607–08 (7 Cir.). A party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting.

*Id.* at 252. In this case, the court believes that plaintiffs should have exhausted their state appellate remedies before they brought this action and complained that their state remedies were inadequate, *see Huffman v. Pursue*, 420 U.S. at 609–11, 95 S.Ct. 1200; *Flynt v. Leis*, 574 F.2d 874, 881 n. 33 (6th Cir. 1978); *Aristocrat Health Club v. Chaucer*, 451 F.Supp. 210 (D.Conn. 1978).[9] Finally, some of the plaintiffs' constitutional contentions will not be mooted by a final state trial on the merits, and they clearly will have a right to appeal on those grounds, *see Crawford v. Crawford*, 569 S.W.2d 505 (Tex.Civ.App.-San Antonio 1978, no writit); *In Re S―― H――*, 548 S.W.2d 804 (Tex.Civ.App.-Amarillo 1977, no writ); *D―― F―― v. State*, 525 S.W.2d 933 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ). Ultimately, review may be obtained in the Supreme Court pursuant to 28 U.S.C. § 1257.

Accordingly, the court concludes that plaintiffs have failed to demonstrate that the state court is an inadequate forum in which to raise the constitutional challenges that would result in the return of the custody of their child or injunctive relief against the pending proceedings. Nor do exceptional circumstances exist which would warrant the nonapplication of *Younger*. Contrary to *Sims*, this court does not believe that Chapter 17 of the Texas Family Code is patently and flagrantly violative of express constitutional prohibitions *"in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."* The *Sims* decision itself found § 17.01 to be valid, and parts of §§ 17.02 and 17.05 passed successfully under the court's scrutiny. Other sections of the statute, §§ 17.04, 17.-07–.09, were not ruled on by the *Sims* court. The Supreme Court in *Trainor* made it clear that the "patent and flagrant" exception to the *Younger* doctrine is a very narrow one. Justice Stephens, who dissented in *Trainor*, pointed out that the exception applies with less force to statutes which, like Chapter 17, have been recently enacted by the states and are untried in its courts, 431 U.S. at 462, 97 S.Ct. 1911.

Further, the court cannot find that the state officials have acted in bad faith or for the purposes of harassment. My examination of the facts in this case reveals that the state has made a good faith effort to meet the constitutional requirements as espoused in *Sims*, a federal decision which awaits further review by the Supreme Court. Finally, the "other" extraordinary circumstances, which were present in *Sims*, have not occurred in this case. Plaintiffs have not had to wait forty-five days without a

---

has broad equitable powers to remedy trial court errors by way of mandamus. See *Duke v. State of Texas*, 477 F.2d at 254 n. 1 (Goldberg, concurring); *see also* Tex.Rev.Civ.Stat. Ann. art. 1733 (Vernon 1962).

9. The fact that plaintiffs may have lost their right to appeal the interlocutory order by failing to perfect such appeal is not relevant, *Huffman v. Pursue*, 420 U.S. at 611 n. 22, 95 S.Ct. 1200.

hearing in state court to present their constitutional claims. The court realizes that the nature of plaintiffs' attack goes to the procedures which this court now finds to be adequate for raising their objections. Justice Stevens had made a similar argument in both *Juidice* and *Trainor.* To date, however, a majority of the Supreme Court has not accepted his view.

Reference is also made to decisions of other courts which have avoided the *Younger* doctrine and passed on child custody procedures, *Alsager v. District Court of Polk County,* 518 F.2d 1160 (8th Cir. 1975); *Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir. 1974); *Newton v. Burgin,* 363 F.Supp. 782 (W.D.N.C.1973), aff'd, 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974). In *Alsager,* the application of *Younger* was not required since there were no pending state court proceedings. In *Newton* the federal district court was asked to intervene during the five-day period between the initial seizure of the child and the scheduled state court hearing, as provided for in the state statute. In the present case, the federal intrusion asked for by the plaintiffs would cause a more serious affront on the state court's ability to decide the constitutional issues, see *Developments in the Law, supra,* at 1313. Finally, the validity of the reasoning in *Cleavor* is doubtful in light of recent Supreme Court decisions, *see Williams v. Rubiera,* 539 F.2d 470, 476 (5th Cir. 1976). For example, the court in *Cleavor* noted that the parents had no counterpart to federal habeas corpus in which to raise their federal claims. This argument was rejected in *Huffman v. Pursue,* 420 U.S. at 605–06, 95 S.Ct. 1200.

In conclusion, the court wishes to emphasize that, although this opinion conflicts with *Sims* to a certain extent, the result in *Sims* can still be reconciled with this opinion. A key distinction in the facts is that in this case the plaintiffs have been afforded a hearing in state court with a possible right of appeal, unlike the plaintiffs in *Sims.*

### IV. CANRIS

▉▉▉ The last problem to be faced by this court is deciding whether the *Younger* doctrine should be inapplicable in light of plaintiffs' constitutional objections to the use of CANRIS, the child abuse computer reporting system. Unlike plaintiffs' other constitutional challenges, this claim probably cannot be raised in the normal course of the pending state court proceeding since it would not have any relevant bearing on the issues presented to the state trial court. The only certain manner in which the plaintiffs could raise their argument concerning CANRIS would be by way of counterclaim. One seeking redress, however, under § 1983 for deprivation of federal rights need not initiate state proceedings, *Huffman v. Pursue,* 420 U.S. at 609–10, 95 S.Ct. 1200; *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Ealy v. Littlejohn,* 569 F.2d 219, 234 n. 48 (5th Cir. 1978). Another way to argue the point is by stating that the action of the state is multifaceted and only certain parts of that action are "pending" before a state court, as the court in *Sims* did. *Sims* refused to abstain from considering one part of the statutory scheme without considering it in its entirety. Somewhat to the contrary, this court finds under the facts of this case the more appropriate action to be that of deciding the issue presented by the state administrative "action" in using CANRIS and abstaining from interference with the pending state proceeding, *cf. Bundy v. Rudd,* 581 F.2d 1126 (5th Cir. 1978). The situation is not one where the plaintiff has two constitutional claims, both of which would serve as a basis for federal injunctive relief against a state judicial proceeding, and only one of which can be presented in that state proceeding. Moreover, plaintiffs in their complaint have requested a separate form of relief for defendant Hicks' threatened input of information into CANRIS. Therefore, in light of principles of comity and federalism, the court will decide only those issues raised by the potential or actual use of CANRIS.

At the hearing held in this court, defendant Hicks, in her testimony, indicated that she had entered information into CANRIS

with respect to the suspected abuse of the plaintiffs' children. Before the November 27th hearing, this information was "sanitized," that is, the date simply reflected the number of children involved, the dates of the alleged abuse, etc., without identifying who allegedly abused the children. After the hearing, Hicks entered a report into CANRIS which stated that the suspected abuse to the child had been validated and gave identifying information concerning the plaintiffs. Apparently, after the state court's dismissal of the action which involved the other three children, Hicks did not made a similar report to CANRIS regarding those children.

In *Sims*, the court found a violation of the parents' rights of due process and privacy whenever the state entered a "validated" report into CANRIS without a judicial determination as to the existence of the abuse or neglect. 438 F.Supp. at 1192. Obviously, defendant Hicks believed that the order entered on November 29, 1978, was such a judicial determination. The court cannot agree with this conclusion. First, a reading of the state court's findings of fact and conclusions of law does not indicate that the abuse of the child by the plaintiffs has been established. Second, even assuming a judicial determination has been made, such determination is only temporary. No compelling reason can be found for making this type of report into CANRIS absent a final judicial determination on the merits.[10] Accordingly, the court holds that defendant Hicks should be enjoined from making any report into CANRIS which in any way identifies the plaintiffs as child abusers, and defendants are ordered to immediately remove all such information which is now stored in CANRIS.

#### Conclusion

In summary, the court makes the following holdings:

(1) the constitutional claims made by plaintiffs, other than those raised by defendants' use of CANRIS, should be dis-

missed pursuant to the doctrine of *Younger v. Harris*;

(2) defendant Hicks should be enjoined from making any report into CANRIS which in any way identifies the plaintiffs as child abusers until a final resolution is reached in the pending proceedings in state court; and defendants should immediately remove all such information which is presently stored in CANRIS.

It is so ORDERED.

---

**10.** Nor has the recent criminal proceeding against Ms. Brown in this court been finally

concluded, notwithstanding the jury verdict against her.