790 P.2d 1045

STATE of New Mexico,
Plaintiff–Appellant,

v.

Socorro JUAREZ, Arturo Navarette,
and Marco Portillo,
Defendants–Appellees.

Nos. 11,088, 11,089 and 11,090.

Court of Appeals of New Mexico.

Feb. 22, 1990.

Certiorari Denied April 5, 1990.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendants-appellees.

## OPINION

APODACA, Judge.

In these consolidated appeals, the state appeals the trial court's orders quashing the grand jury indictments against defendants for first degree murder and conspiracy to commit first degree murder. The orders quashing the indictments were based on the trial court's holding that the prosecutor had breached his duty to assist the grand jury in a fair and impartial manner under NMSA 1978, Section 31–6–7 (Repl.Pamp.1984) by not presenting to the jury certain witness statements that were allegedly exculpatory of defendants.

In addition to contending on appeal that the prosecutor did not violate his duty under Section 31–6–7, the state argues that the exculpatory witness statements were not evidence directly negating guilt, thus not required to be presented to the grand jury under the requirements of NMSA 1978, Section 31–6–11(B) (Repl.Pamp. 1984). We hold that (1) the witness statements were not evidence directly negating guilt under Section 31–6–11(B); and (2) failure by the prosecutor to present such statements to the grand jury did not result in a breach of duty to assist the grand jury fairly and impartially under Section 31–6–7. We therefore reverse the trial court's orders quashing the indictments.

Section 31–6–7 provides in part that "[t]he prosecuting attorney shall conduct himself in a fair and impartial manner at all times when assisting the grand jury." Section 31–6–11(B), on the other hand, states that "[t]he prosecuting attorney ... shall present evidence that directly negates the guilt of [defendant] where he is aware of such evidence."

One night in September 1983, at approximately 9:00 p.m., police responded to a telephone call informing them that shots had been fired. At the scene, they found two men shot and killed in their home. One of the victims was found lying in the front doorway with a gunshot wound to the front of his head. The other victim was found inside the house; he had been shot several times in the back and the back of the head.

Shortly after the shootings, the police took statements from three neighbors. According to the statements, only one man was seen parking a red and white or maroon and white pickup truck directly in front of the victims' house at approximately 9:00 p.m. This man got out of the truck and walked to the victims' front door. The neighbors heard shots. This same man was seen coming out of the victims' front door, walking "pretty fast" to the pickup truck. He got into the driver's side of the truck and drove south. The neighbors' description of the man generally matched the physical characteristics of defendant Portillo but did not match the other two defendants. The neighbors did not report seeing anyone else during these events. Officer Murphy, who testified during the grand jury proceedings, took the statement of one of the neighbors.

The state presented this case to the grand jury in May 1988, some four and one-half years after the killings. The prosecutor did not call the victims' neighbors to testify, nor did he inform the grand jury of the existence of their statements. Instead, the prosecutor relied solely on the testimony of Rebeckah Garcia, Officer Murphy, and Dr. Paul Mallory. Murphy, who first arrived at the scene of the homicides, testified as to what he observed and did not provide any testimony implicating defendants. He stated he was notified of the homicides at approximately 9:05 p.m. Dr. Mallory, who testified as to the cause of death, stated that he had pronounced the victims dead at 9:40 p.m. These times become significant when one considers Garcia's testimony, which provided the only crucial link implicating defendants.

Garcia testified that a drug dealer in Mexico had ordered the deaths because the

victims owed him money. She said that the three defendants and another person, Mario Olguin, who was never found, were involved in the shootings. She said that she had been instructed to wait with Portillo at a prearranged location until Navarette, Juarez, and Olguin passed in the pickup. They were then to wait fifteen minutes and drive to and around a certain neighborhood. The instructions were carried out as planned. As she and Portillo drove around the area, she saw defendants Navarette and Juarez, together with Olguin, pull up in front of the victims' home in a red and white pickup truck. Navarette, Juarez, and Olguin got out of the truck and walked toward the front of the victims' home. A few minutes later, Garcia parked her car to the northeast of the home, from where they could see the pickup truck but not the front of the victims' house. They waited there a few minutes until Portillo became impatient. He got out of Garcia's car and walked alone toward the victims' house.

Later, Garcia saw the three defendants and Olguin walk from the direction of the victims' home. Portillo signaled her to drive the car near the truck. As she pulled up next to the truck, Portillo entered the car. Navarette, Juarez, and Olguin got into the pickup truck. Both vehicles left the scene at the same time. Garcia's car headed south and the truck headed north, instead of south, as two of the neighbors had stated. In contrast to the neighbors' statements, which had approximated the time of the shots as 9:00 p.m., Garcia testified they occurred about midnight.

The prosecutor revealed to the grand jury that Garcia's testimony was the result of a plea agreement in other matters involving drug-related activities. He also disclosed that Garcia had given a statement some two years earlier that, although generally in accord with her grand jury testimony, did not mention Portillo's involvement. When the prosecutor asked Garcia during the grand jury proceedings why she had previously excluded Portillo, she explained she and Portillo were intimately involved then and that she had not wanted to hurt him.

Relying on *Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981), defendants argued in the trial court that the neighbors' statements were directly exculpatory of them. The basis for this contention was that the statements purportedly proved defendants could not have been present at the scene, thus contradicting Garcia's testimony in that respect. The state, on the other hand, insisted that the statements were not directly exculpatory of defendants under *Buzbee*.

The trial court initially denied defendants' motion, presumably agreeing with the state's contention that the evidence did not directly negate guilt under *Buzbee*. After the trial court's ruling, however, our supreme court filed its opinion in *State v. Boesiger*, S.Ct. No. 17,609 (Filed August 18, 1988). In *Boesiger*, the supreme court reversed this court's holding that the indictment against the defendant was improperly dismissed. The supreme court recognized that the evidence withheld from the grand jury (a tape recording of the victim's dying declaration) was not *directly* exculpatory, thus not required to be presented under Section 31–6–11(B). The court nevertheless concluded that the indictment was properly dismissed because the prosecutor had failed to act fairly and impartially in assisting the grand jury as required by Section 31–6–7, by his failure to reveal existence of the evidence. After *Boesiger* was filed, the state moved for rehearing. Our supreme court granted the motion, withdrew the opinion and quashed certiorari.

Before the opinion in *Boesiger* was withdrawn, however, defendant Juarez filed a motion for reconsideration in the trial court, relying on *Boesiger*. The trial court changed its prior ruling and quashed the indictments against all defendants, holding that under *Boesiger* and Section 31–6–7, the prosecutor had breached his duty to assist the grand jury in a fair and impartial manner.

The precise question for our review may be stated as follows: In light of the specific requirement under Section 31–6–11(B) that a prosecutor present to a grand

jury any evidence *directly* negating a defendant's guilt, can the failure to present evidence that does *not* directly negate guilt nevertheless give rise to a level of prosecutorial misconduct under Section 31–6–7 warranting dismissal of the indictment? For the reasons that follow, we hold that the prosecutor is not required to present such evidence.

■ We emphasize that *Buzbee* interprets Section 31–6–11(B) as requiring a prosecutor to present to a grand jury only directly exculpatory evidence. *See In re Grand Jury Sandoval County*, 106 N.M. 764, 750 P.2d 464 (Ct.App.1988). Directly exculpatory evidence is evidence that, if believed, proves the existence of a fact in issue without the aid of inferences or presumptions. *State v. Sanchez*, 98 N.M. 781, 652 P.2d 1232 (Ct.App.1982). " '[D]irect evidence is proof of facts by witnesses who saw acts done or heard words spoken, while circumstantial evidence is proof of collateral facts and circumstances from which the mind infers the conclusion that the facts sought to be established in fact existed.' " *Buzbee v. Donnelly*, 96 N.M. at 700, 634 P.2d 1252 (quoting *United Textile Workers v. Newberry, Inc.*, 238 F.Supp. 366, 372 (W.D.S.C.1965)).

■ Defendants have attempted to distinguish the facts in this appeal from those in *Buzbee*. They claim the evidence withheld here was far more significant and compelling. It is not necessary to set out the specific facts in *Buzbee*. Instead, we state only that it is difficult to see any factual distinction. Indeed, we believe the evidence in this appeal is the kind of evidence *Buzbee* found to be only circumstantially or indirectly exculpatory. None of the neighbors' statements directly pointed to defendants' innocence. Instead, one can only infer at most that, because the neighbors saw only one individual who did not fit the description of two defendants and did not see other persons exit or enter the pickup truck, defendants must not have been at the scene and thus could not have been involved in the deaths. We believe this inference becomes even more difficult to draw when one considers that the kill-

ings occurred at night when much of the area was in darkness.

Additionally, the only neighbor who saw the truck arrive at the scene admitted that her attention was diverted for a length of time to attend to her children. She stated that when she heard the shots, she quickly laid down on her car seat and only looked up briefly as she reached to close the car door to protect the children. We believe her statement did not preclude the presence of other persons in the pickup truck or in its vicinity at a time when she was otherwise preoccupied. Neither of the other two neighbors' statements eliminated the possibility of the presence of other individuals at the scene.

We conclude the neighbors' statements were not direct evidence from witnesses who saw the murders committed and who knew the identity of the person or persons who fired the shots, even though the neighbors each saw only one man approaching and leaving the victims' house. As argued by the state in its brief, the question before the grand jury was who committed the murders. "The neighbors' statements do not present direct evidence of this fact. The neighbors' statements amount to nothing more than statements by 'a witness ... not identifying [these] defendant[s] ... as being implicated.' " Because we conclude that this kind of evidence was only circumstantial in nature, we hold that the prosecutor did not violate his statutory responsibility under Section 31–6–11(B).

Defendants argue that "[c]ommon sense dictates ... the evidence is exculpatory." Granted, testimony of the three witnesses who did not appear before the grand jury was exculpatory. Likewise, it is true, as suggested by defendants on appeal, that the grand jury could have relied on such testimony, if it had been presented, as a basis to disbelieve Garcia's testimony. This may have permitted the jury to conclude that no probable cause was shown. These arguments do not persuade us for two reasons.

First, in applying the specific provisions of Section 31–6–11(B) and the requirements under *Buzbee*, the evidence in question

must directly negate guilt. It is not all exculpatory evidence that must be presented under the statute's requirements. As we have already noted, the evidence in this appeal fails in that regard.

■ Second, it is generally accepted that the grand jury's function is to investigate and accuse, not to determine the guilt or innocence of a defendant or the truth of the charges brought against an accused. *See Talamante v. Romero,* 620 F.2d 784 (10th Cir.), *cert. denied,* 449 U.S. 877, 101 S.Ct. 223, 66 L.Ed.2d 99 (1980); *In re Grand Jury Sandoval County.* An indictment does not create a presumption of guilt; all charges must later be proven at trial beyond a reasonable doubt. *Buzbee v. Donnelly.* The grand jury's "duty is to indict if the prosecution's evidence, unexplained, uncontradicted and unsupported, would warrant a conviction." *Id.,* 96 N.M. at 696, 634 P.2d at 1248 (quoting *Cassell v. Texas,* 339 U.S. 282, 302, 70 S.Ct. 629, 639, 94 L.Ed. 839 (1950)). As stated in *Buzbee,* "[an] indictment merely puts the accused to trial. The difference between the function of the trial jury and the function of the grand jury is all the difference between deciding a case and merely deciding that a case should be tried." *Id.* at 696, 634 P.2d 1248 (quoting *Cassell v. Texas,* 339 U.S. at 302, 70 S.Ct. at 639 (Jackson, J., dissenting)). In summary, the grand jury only has the power to accuse, not to convict. *Id.* In this regard, we cannot second guess the grand jury or even determine what effect, if any, the omitted evidence would have had on the jury's reliance on Garcia's testimony, which was the sole basis for the finding of probable cause against defendants.

Defendants rely on various cases from other jurisdictions and certain legal references in contending that a prosecutor must present to a grand jury any evidence he knows will *"tend* to negate guilt." *See* I ABA Standards For Criminal Justice, *The Prosecution Function* § 3–3.6(b) (2d ed. 1980); *United States v. Ciambrone,* 601 F.2d 616 (2d Cir.1979) (substantially negating guilt); *Tookak v. State,* 648 P.2d 1018 (Alaska Ct.App.1982) (evidence that "tends to negate guilt"); *Johnson v. Superior Court,* 15 Cal.3d 248, 539 P.2d 792, 124 Cal.Rptr. 32 (1975) (prosecutor must present evidence "reasonably tending to negate guilt").

Defendants also draw our attention to Note, *The Prosecutor's Duty To Present Exculpatory Evidence to an Indicting Grand Jury,* 75 Mich.L.Rev. 1514 (1977). That article purportedly proclaimed the wisdom of the rule adopted in *Johnson* (evidence "reasonably tending to negate guilt") for four reasons listed by defendants. The rule (1) limits the prosecutor's ability to take advantage of his discretionary power in charging the jury; (2) improves the usefulness of the jury as a screening device; (3) brings the level of protection to an accused closer to that provided by a preliminary hearing; and (4) serves judicial economy in screening out cases that should not be tried.

We do not take exception to defendants' argument in this regard, aside from noting that *Johnson*'s broader standard has not been adopted in New Mexico. Defendants' reasoning thus fails to persuade us. Instead, we believe defendants' reliance on these cases and standards is misplaced, since the standard in New Mexico under Section 31–6–11(B) is much narrower—only exculpatory· evidence *directly* negating guilt is required to be presented. In fact, *Buzbee* specifically rejected the criteria announced in *Johnson,* in view of the specific language found in our statute. Defendants would have us broaden the legislative directive found in Section 31–6–11(B), which we decline to do. Besides, *Buzbee* expressly overruled any decisions imposing a requirement that *all* exculpatory evidence be presented to the grand jury.

If this court were to uphold the trial court's dismissal of the indictments on the basis of the prosecutor's general duty of fairness and impartiality under Section 31–6–7, we would essentially be judicially expanding his specific duty to present only directly exculpatory evidence under Section 31–6–11(B). Such an expansion would run counter to the admonition in *Buzbee* that so doing "would force a prosecutor to engage in a guessing game as to what bits and pieces of evidence might tend to be excul-

patory at trial and then demand that the prosecutor produce *all* of it for the grand jury." *Id.* at 701, 634 P.2d at 1253.

■ Finally, we reject defendants' arguments because we believe that case law is soundly premised on the principle that dismissal of an indictment for prosecutorial misconduct is an extraordinary remedy to be granted cautiously to avoid judicial encroachment upon the historically independent function of the grand jury. *See United States v. Chanen,* 549 F.2d 1306 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). *But see United States v. Sears, Roebuck & Co., Inc.,* 719 F.2d 1386 (9th Cir.1983) (recognizing the independence of both the grand jury and the prosecution yet stating that indictments may be dismissed in cases of flagrant prosecutorial misconduct). This important function has been sacredly interwoven into the jurisprudential fabric of our state's constitutional law.

In summary, we hold that *Buzbee* is dispositive of the issue whether the witness statements were evidence directly negating defendants' guilt under Section 31–6–11(B) and answer that question negatively. We also hold that the prosecutor's failure to present such statements to the grand jury did not breach his duty to assist the grand jury fairly and impartially under Section 31–6–7, in light of the fact that the prosecutor did not violate his obligation to present the evidence required by Section 31–6–11(B). The trial court's orders quashing the indictments are thus reversed. We remand for reinstatement of the criminal charges against defendants and for further proceedings consistent with this opinion.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, J., concur.