851 P.2d 509

**Thomas JENNINGS and Richard Maloney, Third-party Plaintiffs/Appellants,**

**v.**

**Kyle HINKLE and Terrell Tucker, Third–Party Defendants/Appellees.**

**No. 13183.**

Court of Appeals of New Mexico.

March 26, 1993.

Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, Mary Lynn Bogle, Ernest L. Carroll, Losee, Carson, Haas & Carroll, P.A., Artesia, for third-party plaintiffs/appellants.

Stevan Douglas Looney, Crider, Calvert & Bingham, P.C., Alburquerque, for third-party defendants/appellees.

### OPINION

BIVINS, Judge.

This case involves a claim under the Civil Rights Act, 42 U.S.C. § 1983 (1988), against two police officers based on the alleged making of false and misleading affidavits for arrest warrants, and on the alleged giving of false and misleading testimony before a grand jury. Third-party plaintiffs Thomas Jennings and Richard Maloney (Jennings and Maloney) appeal an order granting summary judgment in favor of third-party defendants Kyle Hinkle and Terrell Tucker (Hinkle and Tucker), respectively a Deputy Sheriff and Sheriff of Chaves County at the material times, and dismissing Jennings and Maloney's third-party complaint.

In reviewing the propriety of summary judgment, we determine the existence or non-existence of genuine issues of material fact. *Tapia v. Springer Transfer Co.*, 106 N.M. 461, 462–63, 744 P.2d 1264, 1265–66 (Ct.App.), *cert. quashed,* 106 N.M. 405, 744 P.2d 180 (1987). To make this determination in this case, we must decide whether qualified immunity protects the police officers from Section 1983 liability when it is alleged that they violated the third-party plaintiffs' constitutional rights by presenting a magistrate with false and misleading affidavits, and by providing a grand jury with false and misleading testimony. We hold that the officers did not violate clearly established law and, thus,

had qualified immunity from Section 1983 liability. Accordingly, we affirm.

We first will set forth general background information and procedural history, which the parties do not seem to dispute. We next discuss the law applicable to the claim being made, a matter which has not heretofore been decided by the appellate courts of this state. Then we discuss the parties' showings, and the law as applied to those showings.

### 1. Background and Procedural History

This litigation arose out of an incident on November 14, 1987, involving, among others, Jennings, Maloney, Mike Amador (Amador) and Andy Candelaria (Candelaria). Believing a hunting party consisting of Amador, Candelaria, and others (the Amador party) to be trespassing on private ranch land owned by Jennings' father, Jennings and Maloney stopped the party. An altercation ensued which subsequently led to a civil complaint for damages by members of the party against Jennings, Maloney, and David Alcorn based on alleged assault and battery, false imprisonment, and emotional distress. Alcorn, however, was later dismissed from the suit.

After that lawsuit was filed, Jennings and Maloney filed a third-party complaint. Their complaint alleges that Hinkle, the deputy assigned to investigate the incident of November 14, 1987, secured an arrest warrant based on information which Hinkle knew was false and materially misleading. The third-party complaint also alleges that Hinkle gave false and misleading testimony to the grand jury leading to the indictment of Jennings and Maloney for false imprisonment and two counts of aggravated assault. The third-party complaint alleges that Tucker, as Sheriff, "is responsible for the supervision and the conduct of ... Hinkle." Jennings and Maloney sought monetary relief under Section 1983 based on violation of their civil rights.

### 2. Discussion

#### (a) Applicable Law

■ An arrest by a state law enforcement official made in violation of constitutional protections will give rise to a cause of action under Section 1983. *See Monroe v. Pape,* 365 U.S. 167, 168–72, 81 S.Ct. 473, 474–76, 5 L.Ed.2d 492 (1961), *overruled on other grounds by Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, law enforcement officials are qualifiedly immune from suit under Section 1983. They retain the shield of qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (shield of qualified immunity lost "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." (citation omitted)).

The "clearly established" law at issue here is this: a determination of probable cause cannot stand if it is shown that facts material to that determination were misrepresented or omitted, and that these misrepresentations or omissions were intentional or displayed a reckless disregard for the truth. *See State v. Donaldson,* 100 N.M. 111, 116–17, 666 P.2d 1258, 1263–64 (Ct. App.) (search warrant deemed sufficient because omissions from supporting affidavit were not material), *cert. denied,* 100 N.M. 53, 665 P.2d 809 (1983); *Franks v. Delaware,* 438 U.S. 154, 164–72, 98 S.Ct. 2674, 2680–84, 57 L.Ed.2d 667 (1978) (the defendant entitled to hearing on claim that affidavit supporting search warrant contained false statements, provided he could show deliberate material falsehoods or reckless disregard for truth). Additionally, while *Donaldson* and *Franks* deal with affidavits for search warrants, Jennings and Maloney contend that these cases "apply with equal force to false and misleading grand jury testimony," relying on *Anthony v. Baker,* 767 F.2d 657, 663 (10th Cir.1985) (police officer who gives grand jury testimony is not absolutely immune from Section 1983 liability). *But cf. Briscoe v. La-*

*Hue,* 460 U.S. 325, 345–46, 103 S.Ct. 1108, 1120–21, 75 L.Ed.2d 96 (1983) (police officers have absolute immunity when testifying at a criminal trial). We assume, without deciding, that this latter contention is correct. *See generally Buzbee v. Donnelly,* 96 N.M. 692, 696, 634 P.2d 1244, 1248 (1981) (one of grand jury's responsibilities is to determine whether there is probable cause that a person committed a crime). In view of our disposition of the issues presented, we find it unnecessary to resolve in this case the applicability of *Franks* and *Donaldson* to grand jury testimony.

Jennings and Maloney argue on appeal that Hinkle (1) violated clearly established law when he (2) deliberately or recklessly omitted information from his affidavits and grand jury testimony that was (3) material to the probable cause determination and, therefore, (4) Hinkle and Tucker are not qualifiedly immune. While they correctly outline the qualified immunity analysis in this case, Jennings and Maloney fail on appeal because they misapply the materiality element of the analysis. They were required to show a substantial probability that the facts omitted from the affidavits, if presented to the magistrate, would have altered the probable cause determination. *Donaldson,* 100 N.M. at 117, 666 P.2d at 1264. In addition, they must have shown that the facts omitted from the grand jury testimony, had the facts been presented, would have caused the grand jury to vote differently. *See State v. Penner,* 100 N.M. 377, 379, 671 P.2d 38, 40 (Ct.App.1983) (indictment will not be defeated unless the defendant shows that missing testimony would have changed grand jury's vote). Jennings and Maloney did not make these showings.

(b) *The Showings Made by the Parties*

The affidavits for arrest warrants for Jennings and Maloney contain a detailed account of Hinkle's investigation, which spanned a period of ten days. The officer interviewed and took taped statements from the principals. Hinkle visited the scene of the affray on at least two occasions, once with members of the Amador party and Ranger Pete Steele of the Bureau of Land Management (BLM); a second time in the company of Steele, Jennings, Maloney, Jennings' brother, and one other person. These trips were to determine whether the incident occurred on private ranch land or public BLM land. Through examination of maps and section markers on the ground, and use of a compass, it was established that the affray took place on public land, thus establishing that the Amador party had a legal right to hunt on the land. Jennings and Maloney do not now dispute that fact. They take the position that when the incident occurred, they, in good faith, believed that Amador and Candelaria were trespassing on private land, and they claim that their belief was substantiated by a BLM map that they had in their possession at the time of the incident.

Hinkle's affidavits disclose that Jennings and Maloney confiscated hunting rifles and wallets from Amador and Candelaria. Amador and Candelaria told Hinkle, according to the affidavits, that sometime between 4:30 and 5:30 p.m. on Saturday, November 14, 1987, as they were heading back to their camp on horseback, Jennings, whom they knew, and two other men arrived in a jeep. One of the unidentified men jumped out of the vehicle with a rifle in hand and told the hunters they were on private land, that they had been previously warned, and that he was going to take their guns. According to the affidavits, based on Amador's and Candelaria's statements, Jennings and his companions removed Amador and Candelaria from their horses, took their wallets and rifles, jumped back in the jeep, and left. The next day, Jennings brought the rifles and wallets to the Sheriff's office.

After being warned of his rights, according to the affidavits, Maloney gave a statement in which he admitted to stopping by the Amador camp on the evening of Friday, November 13, 1987, and telling the hunters they had to move. He also admitted to exiting the jeep the next day with a rifle in his hand and helping to remove Amador's wallet. Alcorn's statement confirmed most of these facts. His statement also added

that Jennings and Maloney "said sharply ... [to Amador and Candelaria] that they were trespassing on private property and ... [that Jennings and Maloney] were making a citizen's arrest." Alcorn also related a scuffle. He said that he removed Amador's and Candelaria's rifles from their saddle scabbards because "it seemed to be a fairly volatile situation." Alcorn said the horseback riders were then released and allowed to leave.

### (c) Application of the Law to These Facts

Although Jennings and Maloney point out discrepancies between certain statements in the affidavits and statements made by others concerning, for example, who did what to whom, the main thrust of their argument focuses on: (1) Hinkle's failure to inform the magistrate issuing the warrant that Jennings and Maloney had in their possession at the time of the incident a BLM map which showed the Amador party to be on private ranch land, and that Jennings and Maloney in good faith believed that the hunters were trespassing; and (2) Hinkle's failure to include in the affidavits and his grand jury testimony the fact that Candelaria told Hinkle that Maloney never pointed his gun directly at Candelaria or Amador.

■ Jennings and Maloney base their qualified immunity argument on the claim that Hinkle violated clearly established law when he failed to reveal all his information, favorable or unfavorable, to the magistrate and the grand jury. They rely on law indicating that the purpose of requiring facts to be presented to a magistrate or grand jury is to insert a neutral and detached decision maker between the citizen and the officer, who is engaged in the often competitive business of ferreting out crime. *See State v. Gorsuch,* 87 N.M. 135, 137, 529 P.2d 1256, 1258 (Ct.App.1974); *see also Buzbee,* 96 N.M. at 696, 634 P.2d at 1248 (grand jury serves function of standing between accuser and accused). However, Hinkle was required to reveal only facts that were material to the probable cause determination. *See Donaldson,* 100 N.M.

at 116–17, 666 P.2d at 1263–64; *Penner,* 100 N.M. at 379, 671 P.2d at 40; *Buzbee,* 96 N.M. at 696, 634 P.2d at 1248 (grand jury determines probable cause). Moreover, the function of the grand jury is not to decide guilt or innocence; its function is to indict if the prosecution's unexplained, uncontradicted, and unsupported evidence would justify a conviction. *State v. Juarez,* 109 N.M. 764, 768, 790 P.2d 1045, 1049 (Ct. App.), *cert. denied,* 109 N.M. 751, 790 P.2d 1032 (1990).

■ Based on the facts before us, we do not believe that the failure to include specific reference to Jennings and Maloney's BLM map in Hinkle's affidavits was material to the probable cause determination. Paragraph 4 of the affidavits relates a conversation with Jennings on November 15 in which the latter told Hinkle that "he had ran across two individuals on horseback on a road *on his private posted land.*" (Emphasis added.) Hinkle added in the same paragraph that he "asked Mr. Jennings if he was sure that the land that these individuals were on was his private property and he did advise that this was private land and that the land was posted and that the individuals had been warned the previous night about being on this land." That information, coupled with Hinkle's and other persons' extensive efforts to determine whether the incident occurred on private or public land, which were related in the affidavits, surely made the magistrate aware that Jennings and Maloney thought the incident occurred on private land. We do not believe that Hinkle's failure to mention that Jennings and Maloney had the BLM map would have changed the magistrate's determination of probable cause. Thus, this omitted fact was not material and its omission did not violate clearly established law. *See Donaldson,* 100 N.M. at 117, 666 P.2d at 1264.

■ We also reject on materiality grounds Jennings and Maloney's claim that Hinkle should have included in the affidavits Candelaria's statement that Maloney did not point the rifle. Aggravated assault requires use of a deadly weapon to instill in the victim a reasonable belief that he or

she is in danger of receiving an immediate battery. *See* NMSA 1978, §§ 30–3–1 to –2 (Repl.Pamp.1984) (crimes of assault and aggravated assault). The fact that Maloney exited the jeep with a rifle in his hand and confronted the hunters, telling them that they were trespassing and that a citizen's arrest was being made, sufficed to establish probable cause. The fact that Maloney did not point the gun does not negate the existence of probable cause.

■ Jennings and Maloney's claim that Hinkle violated clearly established law in giving his grand jury testimony also must fail. To succeed on this claim, they must show that the facts omitted by Hinkle from his testimony would have changed the grand jury's determination of probable cause and caused them not to indict. *See Penner*, 100 N.M. at 378–79, 671 P.2d at 39–40. They cannot show this because the grand jury, after hearing the omitted information from Jennings and Maloney themselves, still chose to indict.

The cases relied on by Jennings and Maloney to illustrate the type of proof necessary to overcome, or at least raise a fact question as to, qualified immunity either are distinguishable or apply the law incorrectly. For example, in *Stewart v. Donges*, 915 F.2d 572 (10th Cir.1990), a police officer, relying on information that the defendant, who had been staying at the informant's residence, had removed a television set and other items, submitted an affidavit for arrest warrant for the defendant. The officer, however, failed to inform the magistrate that sometime after he received his information, but before the defendant was arrested, the officer was told by another officer that the informant's husband had been bragging that he had caused the defendant trouble by accusing the defendant of taking an item of property, and that the husband had made the false accusation as part of an insurance scam. The Court held that summary judgment in the defendant's subsequent Section 1983 action was properly denied under those circumstances. *Id.* at 583. In that case, the missing information was directly material to the existence of probable cause to arrest because the

sole witness had recanted, whereas, in the case before us, the missing information was immaterial. *See id.* ("[W]e can conceive of few omissions which would be more material than the failure to disclose that the main complainant had recanted his testimony and confessed it was a fabrication."); *see also Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.1990) (where the sole evidence was false).

Jennings and Maloney also rely on the case of *McGaughey v. City of Chicago*, 664 F.Supp. 1131 (N.D.Ill.1987), in which the district court wrote:

The determination of whether reasonably competent officers could disagree whether there was probable cause to arrest McGaughey is hopelessly fact-bound. Thus, even after *Malley* it appears that the qualified immunity analysis in a wrongful arrest case necessitates a resolution of factual disputes fundamental to the plaintiff's affirmative case.

*Id.* at 1139. We decline to follow *McGaughey* because its holding, in our view, does not correctly apply the law, including *Malley*. Clear language in *Malley* indicates that qualified immunity, in order to serve its primary purpose, should usually be decided before trial:

As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... The *Harlow* standard [for objectively determining qualified immunity, which *Malley* applies] is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," and we believe it sufficiently serves this goal.

*Malley*, 475 U.S. at 341, 106 S.Ct. at 1096 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

In addition, we note that the district court, in *McGaughey v. City of Chicago*, 690 F.Supp. 707, 708–09 (N.D.Ill.1988) (*McGaughey II*), vacated the part of its first opinion holding that the defendants could not raise qualified immunity again (e.g., in a motion for directed verdict or a motion for judgment notwithstanding the

verdict) in response to *Green v. Carlson,* 826 F.2d 647, 651–52 (7th Cir.1987), which stated that the qualified immunity question is to be treated like any other issue raised in a motion for summary judgment. *McGaughey II* could be interpreted as acknowledging that qualified immunity is *not* "hopelessly fact-bound" and *can* be decided, as a matter of law, by the trial court.

■ Indeed, the words "qualified immunity" themselves imply the necessity to decide the question before trial: "[t]he entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). If summary judgment is to be denied whenever an arrestee disagrees with an officer's version of what occurred, particularly where the offense is personally observed by the officer, as in *McGaughey,* then police officers will always be at risk of Section 1983 liability, and the primary advantage of qualified immunity—independent, effective government—will be lost. We do not believe that *Malley* mandates that result.

Jennings and Maloney base their claim against Tucker on essentially the same grounds as their claim against Hinkle. They claim that, notwithstanding Tucker's awareness of the omissions from the affidavits, he approved the affidavits. In view of our holding concerning Hinkle, and in view of the fact that Jennings and Maloney have failed to demonstrate any genuine issue of material fact concerning direct personal involvement by Tucker, other than his approval of the affidavits, we find that Tucker also had qualified immunity. *See Gallegos v. State,* 107 N.M. 349, 353–54, 758 P.2d 299, 303–04 (Ct.App.1987) (Section 1983 liability "cannot be based on the doctrine of respondeat superior," and a Section 1983 plaintiff "must show some direct personal involvement by defendants in the violation of plaintiff's rights."), *cert. quashed,* 107 N.M. 314, 757 P.2d 370 (1988).

### 3. *Conclusion*

In allowing for qualified immunity from Section 1983 claims, the United States Supreme Court attempted to "balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). To say that the omitted facts in this case were material to the probable cause determination by the magistrate and the grand jury would, in our opinion, tilt unfairly toward undue interference in the performance of officers' duties, and would have a chilling effect on effective law enforcement.

We hold that Hinkle's omissions from the affidavits and from his grand jury testimony were not material to the probable cause determination in the sense required by *Harlow* and *Franks* in that they would not have changed that determination. Thus, the omissions did not violate clearly established law, and both Hinkle and Tucker were qualifiedly immune from Section 1983 liability. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *see also Snell,* 920 F.2d at 698; *Stewart,* 915 F.2d at 583.

■ We affirm the summary judgment granted. Hinkle and Tucker request attorney fees and costs on appeal. *See Rubio v. Carlsbad Mun. Sch. Dist.,* 106 N.M. 446, 450–51, 744 P.2d 919, 923–24 (Ct.App.1987) (attorney fees for party defending Section 1983 action allowed only when suit is frivolous, unreasonable, or without foundation). We decline to make an award in this case. The law in this area is complicated, and this is the first time the appellate courts of this state have had occasion to visit the issue raised. Oral argument is deemed unnecessary.

**IT IS SO ORDERED.**

PICKARD and FLORES, JJ., concur.