869 P.2d 283

Kathleen YOUNT, for herself and on behalf of her minor son, Shane P., Plaintiff–Appellant/Cross–Appellee,

v.

Michaele MILLINGTON, Angela Adams, Rosemary Roybal, and Virginia Gilmer, individually and as officials of the New Mexico Human Services Department, Defendants–Appellees/Cross–Appellants.

No. 13787.

Court of Appeals of New Mexico.

Nov. 22, 1993.

Certiorari Denied Feb. 4, 1994.

Michael P. Gross, C. Bryant Rogers, Roth, VanAmberg, Gross, Rogers & Ortiz, Santa Fe, for plaintiff-appellant/cross-appellee.

Emily A. Franke, James P. Lyle, Deborah D. Wells, Butt, Thornton & Baehr, P.C., Albuquerque, Mark A. Basham, Legal Bureau, Risk Management Div., Santa Fe, for defendants-appellees/cross-appellants.

## OPINION

PICKARD, Judge.

This case involves a civil rights action pursuant to the federal Civil Rights Act, 42 U.S.C. Section 1983 (1982). It is brought by Plaintiff for herself and on behalf of her minor son against a New Mexico Human Services Department (HSD) social worker, the social worker's supervisor, and the chief Children's Court attorney for the HSD. The action was brought because of Defendants' extraterritorial seizure of Plaintiff's child in California based on an ex parte order issued in New Mexico.

Plaintiff appeals the trial court's judgment dismissing Plaintiff's claims for monetary damages on the basis of Defendants' qualified immunity. Plaintiff also appeals the trial court's finding that Plaintiff failed to prove that she was entitled to declaratory relief for the constitutional rights violated in connection with her claims regarding Defendants' false affidavit and extraterritorial seizure. On cross-appeal, Defendants object to the trial court's denial of their motion for summary judgment on the ground of absolute immunity.

Plaintiff raises three issues on appeal: (1) whether the trial court erred in granting qualified immunity regarding the affidavit underlying the ex parte order, (2) whether the trial court erred in granting qualified immunity regarding the extraterritorial execution of the ex parte order, and (3) whether the trial court abused its discretion in denying declaratory relief. Defendants raise one issue on cross-appeal: whether the trial court erred in finding as a matter of law that Defendants are not entitled to absolute im-

munity. Since we affirm the trial court on the three issues raised by Plaintiff in the appeal, we need not address the issue raised by Defendants on cross-appeal, and thus we leave for another day the question of whether Defendants are protected by absolute immunity for their acts complained of in this case.

## FACTS

The HSD initiated an investigation of sexual abuse of Plaintiff's six-year-old son based on reports of suspected child abuse from consulting diagnostician Ginger Guthrie Reed at the child's school and from clinical social worker Margo Brace. Brace was unable to rule out either parent as the perpetrator of the abuse, based upon the information supplied by Reed and upon Brace's initial interview of the child. Therefore, further investigation was required, and Plaintiff agreed to a follow-up interview with Brace. However, Plaintiff left New Mexico, failing to go to the battered women's shelter in Albuquerque, where she had informed Brace and the HSD she intended to go. Instead, Plaintiff took the child to a shelter for battered women in California without notifying Brace or the HSD of her or the child's whereabouts.

On June 27, 1985, the HSD filed a neglect and abuse petition and an affidavit for an ex parte custody order based on (1) the initial report of sexual abuse from the child's school; (2) subsequent interviews conducted by Brace with the child, both his parents, his maternal grandmother, and a neighbor; and (3) Plaintiff's unexplained flight to California with her son during the HSD's investigation of sexual abuse of the child. Defendant Adams (the HSD attorney) helped prepare the petition and affidavit, and the affidavit was signed by Defendant Millington (the social worker). The next day, Judge Petra Jimenez Maes issued an ex parte order from the state of New Mexico to "any officer authorized to execute this order." The order directed that the child be turned over to the custody of the New Mexico HSD. Prior to Defendant Millington's journey to California, she communicated with the Laguna Beach Police Department to find out how to properly execute a New Mexico order in California. She was informed that the California police would accept and execute a valid New Mexico

order. On July 1, 1985, Defendant Millington, accompanied by two California police officers, took custody of the child at the women's shelter. Plaintiff was given a copy of the ex parte order at that time. Defendant Millington returned to New Mexico with the child on the same day.

Prior to the time Defendant Millington sought the ex parte custody order, she was advised by Defendant Adams to refer the matter to the appropriate California social service authorities. Defendant Millington did contact the California authorities and was told that they would take no action in the case inasmuch as the abuse had occurred in New Mexico and had not recurred since the child was in the protective environment of the shelter. Because Plaintiff and the child could not stay at the shelter indefinitely and because Defendants were still concerned about the child's welfare and safety, they initiated the New Mexico proceedings, and Defendant Millington went to California as stated.

Upon Plaintiff's return to New Mexico, she filed a petition for writ of prohibition and writ of habeas corpus in the New Mexico Supreme Court. Although the Court granted the writ of prohibition, it allowed the HSD to keep custody of the child and remanded the matter to the trial court. Plaintiff eventually entered into a consent decree, at the completion of which full custody of the child was returned to her.

## QUALIFIED IMMUNITY

■ Government officials are entitled to summary judgment on the ground of qualified immunity, provided that their actions are objectively reasonable in the light of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). The issue of qualified immunity is a legal issue that is to be decided prior to trial so that the immunity, which is an immunity from suit, is not lost. *Jennings v. Hinkle,* 115 N.M. 387, 392–93, 851 P.2d 509, 514–15 (Ct.App.1993).

### Affidavit for the Ex Parte Order

■ Plaintiff's assertion that the trial court erred in granting Defendants summary judgment on the issue of qualified immunity regarding the filing of the affidavit appears to be two-fold. First, Plaintiff contends that Defendants affirmatively lied in misrepresenting that the child was in danger. *See generally Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). Second, Plaintiff asserts that Defendants showed a reckless disregard for the truth by omitting the following allegedly "critical facts" from the affidavit: (1) all available information that could have possibly supported a conclusion that the perpetrator of the sexual abuse was male rather than female; (2) all available information that would support the conclusion that the child was not in danger and that Plaintiff was mentally stable enough to care for the child; and (3) the fact that Plaintiff herself had reported an incident to the California shelter staff regarding the child's inappropriate fondling of Plaintiff's breasts. *See generally Jennings v. Hinkle.*

It was well established in 1985 that the intentional falsification or reckless disregard for truthfulness regarding material facts in an affidavit to support probable cause for issuance of a search warrant violates Fourth Amendment rights. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676. By 1985, the law was also clearly established that the omission of material facts undermines probable cause and violates the Fourth Amendment. *Salmon v. Schwarz,* 948 F.2d 1131, 1137–38 (10th Cir.1991); *see United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). It is Plaintiff's burden to show that Defendants intentionally falsified the affidavit or deliberately omitted a material fact or facts that would have changed the probable cause determination for the ex parte custody order. *See Jennings,* 115 N.M. at 390–92, 851 P.2d at 512–14; *see also Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85; *Snell,* 920 F.2d at 698.

Plaintiff cites to no evidence that supports her bare assertion that Defendant Millington lied in the affidavit to retaliate for Plaintiff's leaving for California without informing the HSD and for Plaintiff's failure to return Defendant Millington's phone calls. Instead, the record indicates that Plaintiff's failure to return the HSD's calls could reasonably have compounded the HSD's concerns about the welfare of the child, given the fact that Plaintiff had fled the state of New Mexico with the child in the middle of an HSD abuse investigation without notifying the HSD. Nor are we persuaded by the argument that the attorney's, Defendant Adams', admission that HSD employees "weight" affidavits to satisfy the probable cause requirements constitutes reckless disregard for truthfulness.

Allegations of negligence or innocent mistakes are insufficient to establish intentional or reckless falsification. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. A determination of qualified immunity does not require that Defendants include every piece of information both favorable and unfavorable to a finding of probable cause; rather, Defendants are required to include facts that are material to a probable cause determination. *See Jennings*, 115 N.M. at 391–92, 851 P.2d at 513–14. A fact is material if the affidavit would not support a finding of probable cause had the fact been included. *Id.; see Franks*, 438 U.S. at 156, 98 S.Ct. at 2676; *Williams*, 737 F.2d at 604.

Due to the facts and circumstances of the instant case, we are not persuaded by Plaintiff's argument that the omissions relating to the gender of the perpetrator of the sexual abuse were material. The affidavit makes clear that the HSD believed that the child had been abused, but did not know whether the abuse was by Plaintiff, her husband, or both parents. The affidavit also specified that Plaintiff believed that her husband was the perpetrator but that he denied the allegation. At the time the ex parte order was issued and based upon information supplied by Reed and interviews Brace had conducted with Plaintiff, her husband, the child, the maternal grandmother, and a neighbor, it was unclear whether Plaintiff, the husband, or both parents were abusing the child.

Therefore, the following omissions by Defendants would not have negated probable cause: (1) the omission of the fact that Plaintiff had made prior allegations to the HSD and withdrawn her allegations that her husband had sexually abused the child, or (2) the omission of specific details from Brace's interviews that suggested a male rather than a female sex abuser.

We also are not persuaded by Plaintiff's argument that omission of the following facts was material: (1) that Plaintiff was undergoing counseling at the California shelter; (2) that the administrator at the California shelter had informed the HSD that the staff there believed that Plaintiff was capable of taking care of the child and that the child was not in danger; or (3) that Defendant Millington had been in contact with the juvenile authorities at the California Department of Social Services, and they had refused to initiate a sex-abuse investigation because, absent a new referral of sex abuse occurring in California, they believed they lacked jurisdiction. In the context of child sexual abuse, when Plaintiff had fled to another state with the child during an HSD investigation, when Plaintiff had refused to respond to messages from the HSD, and when Plaintiff would only be allowed to remain at the California shelter for two more weeks, the situation was unsettled and appeared to be unstable. In addition, information supplied by Plaintiff's mother, husband, and neighbor put Plaintiff's mental stability into question and indicated that Plaintiff suffered from bouts of physical violence and irrational fears. There was also information supplied by the staff at the California shelter that contributed to the HSD's concerns of instability: (1) Plaintiff's continued belief that her husband was poisoning her, and (2) Plaintiff's concern that the child was inappropriately fondling her breasts, even though Plaintiff voluntarily reported this information to her counselor at the shelter. Therefore, even if the omitted facts had been included in the affidavit, such information would not have negated probable cause. *See Jennings*, 115 N.M. at 391–92, 851 P.2d at 513–14; *see also Williams*, 737 F.2d at 604.

Accordingly, we affirm the trial court and hold that Defendants did not violate clearly established law by intentionally or recklessly falsifying the affidavit, and that they are thus entitled to qualified immunity regarding the affidavit underlying the ex parte custody order.

### Execution of the Ex Parte Order

Plaintiff argues that the trial court erred in granting Defendants qualified immunity regarding the execution of the ex parte order because such execution was in clear violation of the law of extraterritoriality, due process, the Fourth Amendment, the Parental Kidnapping Prevention Act, 28 U.S.C. Section 1738A (1982) (PKPA), and the New Mexico Child Custody Jurisdiction Act, NMSA 1978, Sections 40–10–1 to –24 (Repl.Pamp.1983) (CCJA). We answer this issue solely with reference to Defendant Millington.

Although the record contains statements of counsel suggesting that all Defendants, and particularly Defendants Millington and Adams, planned to obtain the New Mexico ex parte order and take it to California without regard to obtaining participation by the proper California authorities in the proper manner, statements of counsel are not evidence. *Phillips v. Allstate Ins. Co.*, 93 N.M. 648, 651, 603 P.2d 1105, 1108 (Ct.App.1979). Rather, the affidavits and other showing were to the effect that all participants intended to procure the order in New Mexico and then take it to California for proper execution pursuant to California and interstate law.

In this connection, we note that Plaintiff's contention that Judge Maes was without jurisdiction to enter the ex parte order inasmuch as the child was in California was not raised below or in the briefs permitted by SCRA 1986, 12–213(A) & (C) (Repl.1992). This contention was made for the first time in a supplemental brief that Plaintiff filed almost a year after briefing in this case was completed. Ordinarily, an appellate court will not consider contentions made for the first time in the reply brief. *Doe v. City of Albuquerque*, 96 N.M. 433, 436, 631 P.2d 728, 731 (Ct.App.1981). A fortiori, we should not consider contentions made for the first time

in a supplemental brief. Nor do we believe that the issue Plaintiff is attempting to raise is jurisdictional as that term is used in SCRA 1986, 12–216 (Repl.1992). Plaintiff does not contend that Judge Maes could not issue the ex parte order for use in New Mexico. Thus, the problem was not Judge Maes's entry of the order, but rather Defendant Millington's execution of it, and it is that narrow issue to which we now turn.

Only Defendant Millington was aware of how she intended to have the New Mexico order served. Thus, the only question we address under this issue is whether it was a violation of clearly established federal law prior to July of 1985 for Defendant Millington to take a custody order that would be valid in New Mexico, to request the California police to help her execute it, and to accept the assistance of the California police without first obtaining the intervention of California courts when the California police told her that they would execute the order.

Plaintiff relies on various notice requirements of the PKPA and the CCJA that appear to prohibit ex parte custody orders. *See* 28 U.S.C. § 1738A(e); § 40–10–5. To further substantiate her position, Plaintiff refers this Court to language contained in the writ of prohibition issued by the New Mexico Supreme Court after the execution of the ex parte order, which concludes that these provisions were violated. Plaintiff also relies on New Mexico and out-of-state cases for the proposition that it was well-established law that compliance with the CCJA and comparable statutory enactments was necessary in order for a state to enforce a foreign state's custody order. *See Elder v. Park*, 104 N.M. 163, 168, 717 P.2d 1132, 1137 (Ct.App.1986); *see also Wachter v. Wachter*, 439 So.2d 1260 (La.Ct.App.1983); *In re Pierce*, 184 Mont. 82, 601 P.2d 1179 (1979); *Priscilla S. v. Albert B.*, 102 Misc.2d 650, 424 N.Y.S.2d 613 (Fam. Ct.1980).

None of these arguments control in the context of this case. We first note that the allegedly violated law that must be clearly established in the context of a qualified-immunity analysis is federal law, not state law. *Estate of Himelstein v. City of Fort*

*Wayne,* 898 F.2d 573, 575 (7th Cir.1990); *Garcia v. Las Vegas Medical Ctr.,* 112 N.M. 441, 443, 816 P.2d 510, 512 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991). Thus, to the extent that Plaintiff relies on the New Mexico CCJA, we note that it is state, not federal, law.

▮ Second, a legal point is clearly established for the purpose of defeating qualified immunity when it has been decided by either the highest state court where the cause of action arose, by a United States court of appeals, or by the United States Supreme Court. *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir.1988) (citing *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981)). Thus, *Elder* and the related cases cited by Plaintiff in her reply brief also fail to support Plaintiff's argument that the law was clearly established regarding execution of ex parte custody orders. None of these cases satisfy the *Robinson* and *Wallace* criteria of being from the highest state court in the state where the cause of action arose, a United States court of appeals, or the United States Supreme Court.

Third, while the PKPA is clearly a federal law, the New Mexico Supreme Court has held that it does not preempt any state law and does not apply to child abuse and neglect proceedings. *State ex rel. Dep't of Human Servs. v. Avinger,* 104 N.M. 255, 257, 720 P.2d 290, 292 (1986). Although the writ of prohibition appears to have followed a contrary approach and assumed that the PKPA was applicable in the context of abuse and neglect proceedings, the writ was issued after the July 1, 1985, incident. Furthermore, Plaintiff has not asserted that the writ is law of the case, so we do not address that issue here.

We move next to the more general consideration of whether Plaintiff's minimum federal due process rights were violated by her not receiving notice and a hearing prior to execution of the temporary child custody order. At the time the child was taken into custody on July 1, 1985, Plaintiff received a copy of the ex parte order, thereby complying with the notice requirement of Children's Court Rule 53 (Repl.Pamp.1982). A hearing in compliance with Children's Court Rule 54 (Repl.Pamp.1982) was held a week later, at which Plaintiff and her attorney were present.

▮ The law is that federal due process requires flexibility and that in extraordinary situations, the requirement of notice and an opportunity to be heard can be postponed until after the deprivation of a constitutionally protected interest. *See Duchesne v. Sugarman,* 566 F.2d 817, 825–26 (2d Cir. 1977) (citing *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971)). The law is also that when a child's safety is threatened, that is a sufficient basis to justify postponing the parent's hearing until after the child has been taken into protective custody. *See Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir.1983); *Newton v. Burgin,* 363 F.Supp. 782, 783–84, 785, 788 (W.D.N.C.1973), *aff'd,* 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974).

▮ Therefore, it was not clearly established that Defendant Millington's actions violated federal due process law. In fact, the contrary appears to be true. The applicable federal constitutional law was that in the context of child abuse and neglect proceedings, a parent's child-rearing and due process rights were balanced against the state's interest in protecting and caring for neglected children. *Newton,* 363 F.Supp. at 786. Furthermore, in achieving a balance of these interests, a post-deprivation hearing within a reasonable period would not violate the minimum federal due process rights of the parent. *Id.*

The remaining issue is whether it was clearly established in 1985 that Defendant Millington's actions violated the law on extraterritoriality or the Fourth Amendment. Plaintiff relies on general statements of long-established law to the effect that legislatures cannot legislate outside their jurisdictions, *e.g., American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 357, 29 S.Ct. 511, 513, 53 L.Ed. 826 (1909); that New Mexico officials cannot act outside their borders, *e.g., Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); and that courts are restricted in

the exercise of their authority to the limits of the state, *e.g.,* 21 C.J.S. *Courts* § 70 (1990).

 However, in order for Plaintiff to defeat Defendants' qualified-immunity defense, Plaintiff must show that the allegedly violated right is not simply a generalized right but is "clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the [defendant's] position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir.1989) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990). Government officials are entitled to qualified immunity even if the right in question is generally protected by federal law, but the law is not clearly established on whether an exception permitted the objected-to acts. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (not clearly established law whether a national security exception might have permitted an otherwise illegal warrantless wiretap).

 Government officials are also entitled to qualified immunity if, focusing on the particular facts, it was objectively reasonable for the defendant to believe that his or her acts did not violate a clearly established right. *Id.; see Ross v. Neff,* 905 F.2d 1349, 1353–54 (10th Cir.1990) (although Oklahoma peace officers violated Fourth Amendment rights in making arrest outside their jurisdiction on Cherokee Indian Tribal Trust land, it was not well-established law that when peace officers were present upon the request of the tribal organization and when the arrest would not have undermined tribal or federal interests, such an arrest lacked jurisdiction and violated the Fourth Amendment).

 In the instant case, pursuant to child neglect and abuse proceedings, an ex parte custody order had been issued from the state of New Mexico to "any officer authorized to execute this order," directing that the child be delivered to the custody of the New Mexico HSD. The Santa Fe Police Department had also sent a communication to the Laguna Beach Police Department, requesting that they assist Defendant Millington in her function as an agent of New Mexico to enforce the New Mexico ex parte custody order. Based on a facially valid ex parte custody order, with the assurance that the California police would be assisting in the enforcement of the foreign state's order, Defendant Millington accompanied the police officers to the shelter, where the child was taken into protective custody. Therefore, focusing on the particular facts in the instant case, we do not find that the social worker, Defendant Millington, was objectively unreasonable in her belief that her actions were not violating federal extraterritorial or Fourth Amendment law when she participated in the execution of a facially valid ex parte custody order in the context of an ongoing child abuse and neglect proceeding and when she had obtained the assistance of the California police department in executing the order.

We do not believe that social workers faced with the circumstances presented in this appeal reasonably would know that ex parte orders cannot be served in another state when that state appears to them to allow service of the order. In this case, the California authorities appeared to give Defendant Millington express approval to obtain service of the ex parte order in California without domesticating it. Because of that state's action, the social worker here reasonably did not know that the New Mexican ex parte order could not be served in California. Under different circumstances, we might not be able to say that social workers would not reasonably know that ex parte orders cannot be executed outside the jurisdiction.

Plaintiff relies on extradition law which appears to be to the effect that state law and procedures are incorporated into the federal law such that a failure to follow the extradition statutes will give rise to a violation actionable under Section 1983. *See Sanders v. Conine,* 506 F.2d 530, 532 (10th Cir.1974). However, we do not believe that this line of authority was clearly established in a sufficiently "particularized sense" that the illegality of her action in connection with an abuse and neglect case must have been apparent to Defendant Millington. *See Danese,* 875 F.2d at 1242.

Accordingly, we hold that given the state of the law in 1985, it was objectively reasonable for Defendant Millington to have believed that participating with the California police officers in executing in California a facially valid New Mexico ex parte custody order, based on allegations of sexual abuse, that complied with the post-deprivation prompt notice and hearing requirements in Children's Code Rules 53 and 54, would not violate Plaintiff's federal rights.

### DECLARATORY RELIEF

Plaintiff relies on *Society of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1219 (5th Cir.1991), for the contention that the trial court erred in denying declaratory relief. Plaintiff asserts that declaratory relief is even more compelling and urgent when immunity bars recovery of damages. *See id.* (the court found declaratory relief particularly equitable when First Amendment rights were violated in a Section 1983 action when the plaintiff was not entitled to damages due to judicial absolute immunity). Plaintiff also argues that in order to safeguard the important constitutional right to custody of one's children under *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972), declaratory relief is required because there is a danger of repetition of the same action by the HSD—if not directly to Plaintiff, then to others. Plaintiff relies on *Kidd v. Schmidt,* 399 F.Supp. 301, 303 (E.D.Wis.1975), and 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* Section 2751 (2d ed. 1983).

In the absence of clear New Mexico law on this issue, we look to federal law for guidance. *See Allstate Ins. Co. v. Firemen's Ins. Co.,* 76 N.M. 430, 433, 415 P.2d 553, 555 (1966) (citing federal cases in declaratory judgment action); *cf. State v. Weddle,* 77 N.M. 420, 423, 423 P.2d 611, 614 (1967) (federal law persuasive on interpretation of identical New Mexico law). On appeal, the lower court's decree will be reversed only for an abuse of discretion. *Norvell v. Sangre de Cristo Dev. Co.,* 519 F.2d 370, 378 (10th Cir.1975). Under both the federal and state declaratory judgment acts, in order to sustain a declaratory judgment action, it is necessary to establish that an "actual controver-

sy" between the parties exists. 28 U.S.C. § 2201 (1982); NMSA 1978, § 44–6–2. In the context of a declaratory judgment, the test for what constitutes an actual controversy is "whether there is a controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment." *Norvell,* 519 F.2d at 378.

In the instant case, Plaintiff cites to no contact between the HSD and herself or her child since full legal and physical custody of the child was returned to Plaintiff after expiration of the September 15, 1985, Consent Decree. "The mere possibility or even probability that a person may be adversely affected in the future by official acts" fails to satisfy the actual controversy requirement. *Dawson v. Department of Transp.,* 480 F.Supp. 351, 352 (W.D.Okla.1979). In addition, "[t]he likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." *Sample v. Johnson,* 771 F.2d 1335, 1340 (9th Cir.1985) (citing *Preiser v. Newkirk,* 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975)), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986).

Accordingly, we are not persuaded by Plaintiff's argument that an actual controversy exists between her and the HSD, or that any danger persists. Nor are we persuaded by Plaintiff's reliance on *Herman* for the proposition that when a plaintiff's constitutional rights have been violated and the plaintiff was not entitled to damages, declaratory relief was particularly warranted. In the subsequent en banc opinion, the Fifth Circuit set aside the earlier three-member panel decision and held that it was improper to grant declaratory relief in the absence of any actual case or controversy. *Society of Separationists, Inc. v. Herman,* 959 F.2d 1283, 1287 (5th Cir.) (recognizing that declaratory relief was desired in order to support attorney fees under Section 1988, the court declined to support such an "end run" around the defendant's immunity and "impos[e] costs solely to protect against a hypothetical risk of future harm"), *cert. denied,* ⸺ U.S. ⸺,

113 S.Ct. 191, 121 L.Ed.2d 135 (1992). We therefore affirm the trial court's denial of declaratory relief.

CONCLUSION

The judgment is affirmed.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.